IN RE INTEREST OF TINA L.K. AND BILLY M., CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. TINA M.K., APPELLANT.
528 N.W.2d 357

Filed February 28, 1995.   No. A-94-314.

Mark R. McKeone, of Hart Law Office, P.C., for appellant.

Rebecca Harling, Deputy Dawson County Attorney, for appellee.

IRWIN and MILLER-LERMAN, Judges, and NORTON, District Judge, Retired.

NORTON, District Judge, Retired.

Tina M.K., natural mother of Tina L.K. and Billy M., appeals the termination of her parental rights. The Dawson County Court, acting in its capacity as a juvenile court, found that the mother had substantially and continuously neglected her children and had refused to give the children necessary parental care and protection and that she made little or no progress in meeting the goals of a rehabilitation plan instituted after adjudication of the children.

## STATEMENT OF FACTS

Tina M.K. is the mother of Billy M., now 5 years old, and Tina L.K., now 4 years old. On June 25, 1992, Tina and Billy were adjudicated by the county court. However, there is no petition for adjudication or adjudication order in the court records. In the transcript of the court proceedings, the judge announced at the end of the hearing that "I'm going to adjudicate in accordance with (indiscernible)." At that hearing, evidence was presented that the mother had left her children with an acquaintance in a trailer home on May 17, 1992. The mother testified that she had gone to inquire of a friend nearby whether the friend needed a ride to work. A Lexington police officer testified that the acquaintance had reported being assaulted in the trailer the evening of May 17. When she reported the incident, the acquaintance brought the children with her. The police officer testified that the mother did not contact the police about her missing children until May 19. A social worker who picked the children up from the police on May 17 stated that the children's hygiene was poor and that they seemed tired and hungry. The court stated at the hearing:

> I'm going to adjudicate the children. I — I think . . . she's sincere. I've seen her with the children here frequently, and I — I guess I know that in my heart I guess I know that [the mother] does love those children, and takes care of them as best she can. I think probably there was some, at the very least, some poor judgment here.

At the close of the "adjudication" hearing, the county court ordered the Department of Social Services (DSS) to prepare a rehabilitation plan. Thereafter, other plans were prepared.

However, the record does not contain any evidence that any evidentiary dispositional hearings took place, at which the court could determine whether the various plans ordered by the court contained reasonable material provisions which would correct, eliminate, or ameliorate the situation or condition on which the adjudication was supposedly based. The record reflects that the first case plan was prepared on August 13, 1992. On October 27, 1992, the court ordered the visitation plan contained in the case plan, but did not order the rehabilitative portion of the plan. The plan ordered visitation on Tuesday, Wednesday, Thursday, and Friday, to take place at the mother's home. Kim Burmond, a DSS family support provider, testified that between May 1992 and February 1993, the mother had about 47 visits with the children and missed about 17.

At the termination proceeding, the State adduced evidence regarding the mother's noncompliance with the August 13, 1992, plan, although the plan had not been approved by the court. Goal No. 1 of the plan required the mother to "work with family support provider in acquiring parenting skills to assist in parenting her children more effectively." Burmond testified at the termination hearing that the mother tried to work on parenting skills, but did not "really follow through real well." However, Burmond also testified, "I don't know how much of it sunk in or how much she would follow through on that."

Goal No. 2 required the mother to acquire "problem solving skills and decision making skills by attending and participating in individual counseling on a weekly basis." The mother's therapist, Maureen Lauby, testified at the termination hearing that the mother attended therapy three times and was angry because she did not understand the need for therapy. Goal No. 3 required the mother to "address her past victimizations of chaotic and abusive relationships by attending therapy on a weekly basis to better understand the past." Lauby testified that the mother did not meet this goal.

Goal No. 4 required the mother to obtain full-time employment and seek housing for herself and her children to become self-sufficient. In addition, the mother was required to work with a family support provider to meet this goal and to

attend and participate in "Job Support." Naomi McCurdy, a DSS caseworker, testified that the mother did attend some Job Support classes in Lexington and did obtain sporadic jobs, but that she did not keep any job very long. McCurdy also testified that the mother did not obtain housing by herself, but, instead, lived with others.

Sometime in October 1992, the mother moved from Lexington to Wauneta. Between the implementation of the visitation plan on October 27, 1992, and January 15, 1993, she visited her children once, on December 11, 1992. Burmond testified at the termination hearing that the mother had requested that visitation with her children take place in Lexington, but apparently her request was not granted. On January 15, 1993, a new case plan was drafted. The January 15 case plan contained the same goals for rehabilitation contained in the August 1992 case plan. In addition, the case plan noted that the mother failed to contact the family support provider when she was unable to travel to visit her children and that the mother's excuse was that the family support provider had not contacted her to set up the visitations. The new visitation schedule recommended visitation on Thursdays, to take place in Elwood. On January 27, 1993, the court found, "The case plan and visitation schedule of the Department of Social Services is ordered." In addition, the court transferred custody of Billy from foster parents in Elwood to Billy's paternal grandparents in Omaha.

A rehabilitation plan drafted on June 8, 1993, stated that between January and June 1993, the mother had visited her daughter twice and had not visited her son since he was placed with his grandparents in Omaha. The plan noted that the mother had told DSS that it was very difficult for her to travel to Elwood because of the cost and the distance. The plan also noted that the mother requested that she be allowed to phone her children once a week from the DSS office in Imperial. The plan recommended that visitation take place two times every other week in Wauneta.

On July 21, 1993, the court ordered the case plan. However, sometime in July 1993, the mother moved to Omaha, where she remained until August 1993, when she returned to Wauneta to

be married. Upon the mother's move to Omaha, DSS proceeded to transfer the case file to Omaha; however, the actual transfer did not take place until the day the mother left Omaha to move back to Wauneta. The mother testified that she tried to get visitation with Billy when she was in Omaha, but that until the file was transferred, a caseworker would not be assigned by DSS, and therefore she could not arrange visitation with DSS. The mother testified that she did have telephone contact with Billy and that that was the only contact she was permitted to have while she was in Omaha. Karen Poindexter, a DSS case manager, testified that after the mother moved back to Wauneta, "[it] took some time" to get the file transferred from Omaha back to Wauneta.

The June 1993 case plan includes Terry B., the mother's husband as of August 1993, in the required goals for rehabilitation. Goal No. 1 of the plan required the mother and her husband to "work with the therapist on bonding with the children, showing patience and appropriate disciplining." Rebecca Nielsen, the mother's therapist, stated that she was unable to work on goal No. 1 with the mother because of the mother's move to Omaha. Goal No. 2 required the mother to set up a schedule for meals and naps. Goal No. 3 required the mother to work with a family support provider to learn to fix nutritional meals. Goal No. 4 required the mother and her husband to set up a family budget. No evidence was introduced at the hearing regarding whether the mother met or failed to meet goals Nos. 2, 3, or 4. Goal No. 5 required the mother and her husband to acquire better communication skills. Nielsen testified at the termination proceeding that the couple worked "very hard" at reaching this goal. Nielsen testified that she met with the mother from January until July 1993, when the mother moved to Omaha.

Goal No. 6 required both the mother and her husband to attend weekly therapy. Poindexter testified at the termination hearing that the couple did not attend therapy regularly. Goal No. 7 required the mother to obtain a part-time job and "maintain the job without quitting or getting fired." Poindexter testified that the mother did obtain part-time jobs, but did not hold them. Goal No. 8 required the mother to acquire beds for

her children. Poindexter testified the mother did so. Goal No. 9 required the mother to keep a clean house and yard. Poindexter testified that while the mother did not keep her yard clean, she did keep the house clean.

On January 5, 1994, a new case plan was drafted which recommended the same visitation plan as that adopted in July 1993 and recommended that a case plan for the mother be assessed and redesigned to apply to her new residence and needs in Wauneta. The plan was adopted by the court on January 12, 1994. However, on January 31, 1994, the Dawson County Attorney filed a motion to terminate the mother's parental rights. McCurdy testified at the termination hearing that the mother had visited Tina on February 5, 12, and 19, 1994, but that prior to February 1994, she had not visited her children since August 1993.

The January 27, 1994, motion alleged that the mother's parental rights should be terminated as to Tina pursuant to Neb. Rev. Stat. § 43-292(7) (Reissue 1993), because Tina had been in an out-of-home placement for over 18 months and the mother had failed to correct the conditions leading to the juvenile's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by DSS. The motion also alleged that the mother's parental rights should be terminated as to Billy pursuant to § 43-292(1), because she had abandoned Billy for over 6 months.

The county attorney then filed a supplemental petition to terminate the mother's rights, alleging that in addition to terminating her rights as to Tina because she had failed to comply with the rehabilitation plan, the mother's rights to Tina should also be terminated pursuant to § 43-292(1), because she had abandoned Tina for over 6 months. In addition, the supplemental petition alleged that the mother's rights to Billy should also be terminated pursuant to § 43-292(7), because Billy had been in an out-of-home placement for 18 or more months and the mother had failed to correct the conditions leading to the juvenile's out-of-home placement.

In contrast, in the transcript of the proceeding, the court terminated the mother's parental rights under 43-292(2) and (6) both, that being that the parents

have substantially and continuously repeatedly neglected the juvenile — juveniles, not given them necessary parental care or protection. Further that the minors were adjudicated, a plan was set up under paragraph — subparagraph 6 and efforts were made and little or no progress in either one of those.

According to the court's written order, the mother's rights were terminated under § 43-292(2) and (6), on the basis that the mother had substantially and continuously or repeatedly neglected her children and that the children had been adjudicated under § 43-247(3)(a) and the mother had failed to correct the conditions leading to the children's adjudication. The mother appeals the termination of her parental rights.

## ASSIGNMENTS OF ERROR

The mother alleges that the county court erred when it (1) terminated her rights based on a court-ordered plan that imposed unreasonable financial and travel requirements, (2) terminated her rights after failing to find that she willfully failed to comply with the rehabilitation plan, and (3) terminated her rights on the basis of neglect when there was no pattern of neglect shown.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994).

## ANALYSIS

While an appellate court does not consider assignments of error not listed and discussed in the briefs, it always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *In re Interest of D.M.B.*, 240 Neb. 349, 481 N.W.2d 905 (1992). Neither of the plain errors we discuss in this opinion

was assigned as error by the mother. First, we note plain error under *In re Interest of D.M.B.* It is well-established law that if a court, upon an adjudication of a child pursuant to Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), orders a rehabilitation plan, the court

> thereafter shall hold an evidential hearing to determine reasonable provisions material to the parental plan's rehabilitative objective of correcting, eliminating, or ameliorating the situation or condition on which the adjudication has been obtained. . . . The record of proceedings before a juvenile court shall contain the evidence presented at the dispositional hearing held for the purpose of the parental rehabilitative plan. The juvenile court's specific findings of facts supporting the provisions contained in the parental rehabilitative plan shall be stated in the record.

*In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 273, 417 N.W.2d 147, 161 (1987). The mother in *In re Interest of D.M.B.* had her parental rights terminated for failure to comply with a rehabilitation plan ordered by the court. The Supreme Court noted that the juvenile court had failed to find facts to support the rehabilitative steps it ordered and that such failure constituted plain error. The court further noted, " 'Without an adequate record reflecting the parental shortcomings or the parental conduct to be corrected, eliminated, or ameliorated through a rehabilitative plan, it is virtually impossible for this court to evaluate the efficacy of a rehabilitative plan . . . .' " 240 Neb. at 359, 481 N.W.2d at 913 (quoting *In re Interest of J.S., A.C., and C.S., supra*). In the record before us, we have neither a petition for adjudication nor an order by the court finding that the children were adjudicated. Instead, the sole record of adjudication before us is a transcript of the proceedings, in which the court found that the mother "takes care of [the children] as best she can. I think probably there was some, at the very least, some poor judgment here." There is no transcript of an evidentiary dispositional hearing, nor is there any order in the record reciting the factual basis for the court's decision to order the rehabilitative steps contained in the various rehabilitation plans. Without an adjudication petition or order,

this court can only guess as to why the children were adjudicated and what parental conduct or shortcoming was supposed to be corrected, eliminated, or ameliorated through the various rehabilitation plans.

Second, we note further plain error in that the mother was denied due process because she was not properly advised of the basis for termination. "[P]ersons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753-54, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). See, also, *In re Interest of D.J. et al.*, 224 Neb. 226, 397 N.W.2d 616 (1986). The petition to terminate the mother's parental rights stated that termination should be had under § 43-292(1), because she had abandoned her children for 6 months or more immediately prior to the filing of the petition, and under § 43-292(7), because the children had been in an out-of-home placement for 18 or more months and the mother had failed to correct the conditions leading to the children's out-of-home placement in spite of the efforts and services to the mother ordered by the court. Although the State sought termination under § 43-292(1) and (7), the court terminated the mother's rights under § 43-292(2) and (6). Specifically, at the conclusion of the termination proceeding, the court pronounced judgment terminating the mother's parental rights under § 43-292(6), which provides that parental rights will be terminated when the court has previously adjudicated the child under § 43-247(3)(a) and reasonable efforts have failed to correct the reasons leading to the adjudication, and under § 43-292(2), on the basis that she had substantially and continuously or repeatedly neglected her children and refused to give her children necessary parental care and protection. Following the court's pronouncement at the hearing, the court entered a written order stating that the mother's parental rights should be terminated under § 43-292(2) and (6). In sum, neither the court's pronouncement of judgment at the end of the termination proceeding nor the court's written order terminated the mother's parental rights for

the same reasons alleged in the petition for termination. Although the petition for termination was apparently amended to add allegations that both children had been abandoned and had been in foster care for over 18 months and that the mother had not corrected her behavior which led to her children's placement, the petition was never amended to include the allegation of neglect, and thus, the court's judgment was not responsive to the allegations. Therefore, the mother was not given any notice that the action to terminate her parental rights would be based on neglect under § 43-292(2), nor was she given notice of the facts of the alleged neglect that termination would be based on, as is required under Neb. Rev. Stat. § 43-291 (Reissue 1993). The juvenile court ordered termination of parental rights between the mother and her children on such basis. Such lack of notice constitutes plain error. See *In re Interest of D. J. et al.*, 224 Neb. 226, 397 N.W.2d 616 (1986).

Because plain error was made, we must vacate the order of the juvenile court to terminate the mother's parental rights and remand the cause for further proceedings in accord with this opinion.

VACATED AND REMANDED FOR
FURTHER PROCEEDINGS.