IN RE INTEREST OF LISA W. & SAMANTHA W.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
MARK W. AND PATRICIA W., APPELLANTS.
606 N.W. 2d 804

Filed March 3, 2000.   No. S-99-038.

Ann C. Mangiameli and Laura Hilliard, of Legal Aid Society, Inc., for appellants.

James S. Jansen, Douglas County Attorney, and Karen S. Kassebaum for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.
### NATURE OF CASE
Mark W. and Patricia W. are the natural parents (collectively the parents) of Lisa W. and Samantha W. (collectively both children). The parents appeal from the December 31, 1998, order of the separate juvenile court of Douglas County which terminated their parental rights to both children pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 1998), and continued the custody of both children with the Nebraska Department of Health and Human Services. Although the juvenile court erred in terminating the parents' parental rights as to Samantha under § 43-292(6) and (7), we nevertheless conclude that there is clear and convincing evidence which supports termination of parental rights as to both children under § 43-292(2) and therefore affirm the order of the juvenile court terminating the parents' parental right to both children.

### STATEMENT OF FACTS
Lisa was born on January 22, 1996. On March 22, Lisa was removed from the parents' home and placed in protective custody with the Nebraska Department of Social Services, now known as the Department of Health and Human Services (hereinafter DHHS), by the Omaha Police Division due to an unsafe and unsanitary home environment. She has been in foster care

continuously since March 24, 1996. At the adjudication hearing, the parents admitted that on March 22, Lisa was "in an unwholesome manner to include caked dirt on the child's feet and ears; matted hair; long, dirty fingernails; and a bad diaper rash on the child's bottom," and the juvenile court concluded that Lisa was a child as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993), being under the age of 18 years and lacking proper parental care by reason of the faults or habits of her parents.

On June 26, 1996, the juvenile court implemented its first rehabilitative plan with the expressed goal of reunifying the family. Five additional court-ordered rehabilitative plans were implemented between February 1997 and September 1998. These plans generally contained the following provisions and objectives:

Plan 1—June 26, 1997—required the parents to (1) obtain and maintain stable, adequate, independent, and sanitary housing for themselves and Lisa; (2) undergo psychological evaluations; (3) cooperate with the family support worker and with all professionals involved to learn basic housekeeping techniques and parenting training; (4) maintain a legal source of income to provide for themselves and Lisa; (5) maintain supervised visitation with Lisa of not less than 3 hours, two times per week, and not more than 4 hours, three times per week; (6) immediately inform their attorney, DHHS, and the juvenile court of any change in address or telephone number; and (7) be informed of Lisa's medical appointments so that they could attend the same.

Subsequent plans continued to contain essentially the same provisions, with the following additional terms:

Plan 2—February 12, 1997—required the parents to (8) continue individual therapy.

Plan 3—August 15, 1997—required the parents to (9) undergo psychiatric evaluations as arranged by DHHS.

Plan 4—November 7, 1997—required the parents to (10) continue individual therapy to address issues of anger control for Mark and the reduction of depressive symptoms and the development of appropriate emotional expression for Patricia.

Plan 5—December 15, 1997—required the parents to (11) participate in "in-house" therapy.

Plan 6—September 15, 1998—was essentially unchanged from the prior plans.

Throughout the juvenile court proceedings, DHHS supplied the parents with a wide variety of support and services. The parents were provided with a family support worker to address housekeeping and parenting skills. This support worker also assisted in referrals to low-income housing and employment. The parents were provided the services of visitation specialists, as well as bus tickets to aid in transportation. The parents both received in-office and in-home therapy. Patricia was provided vocational rehabilitation services.

During the pendency of the juvenile court proceedings, the parents were afforded three visits and one family support session per week. From the end of September 1997 to January 1998, the visits took place in the parents' home. Following numerous reports in January 1998 that the home was unsafe for Lisa due to filthy conditions and a cockroach infestation, in which it was reported that cockroaches were "literally cascad[ing] out" of cupboards, the visits took place in a neutral setting.

Samantha was born on July 21, 1998. Immediately after her birth, DHHS provided the parents with 2 weeks of "crisis intervention," which consisted of a specialist visiting in the parents' home for several hours each day. The specialist worked one-on-one with the parents on infant care issues. Despite this assistance, however, on August 14, the State filed a supplemental petition alleging Samantha was a child within the meaning of § 43-247(3)(a) (Reissue 1998), lacking proper parental care by reason of the faults of her parents. On the same date, following a motion by DHHS, the juvenile court entered an order directing DHHS to take Samantha into immediate custody.

On September 24, 1998, the State filed its amended supplemental petition, seeking, inter alia, the termination of the parents' parental rights with respect to both children. The amended supplemental petition sought termination as to Lisa based upon § 43-292(2), neglect of the child or a sibling; § 43-292(6), failure to follow rehabilitative plans and correct conditions leading to adjudication; and § 43-292(7), out-of-home placement for 15

of the most recent 22 months. Termination of parental rights was sought as to Samantha pursuant to § 43-292(2).

A termination hearing was held on December 2, 1998, and continued on December 10. Ten witnesses testified, and numerous exhibits were received. On December 31, the juvenile court ordered the termination of parental rights of the parents as to both children, pursuant to § 43-292(2), (6), and (7). The parents timely appealed.

## ASSIGNMENTS OF ERROR

The parents allege, restated, that the juvenile court erred (1) in its retroactive application of certain 1998 amendments to the juvenile code found in Neb. Rev. Stat. § 43-283.01 (Reissue 1998) and § 43-292, which application violated their due process rights guaranteed under the 5th and 14th Amendments to the U.S. Constitution and article I of the Nebraska Constitution; (2) in its determination that the State did not fail to make reasonable efforts to reunite Samantha with the parents, in accordance with the provisions of § 43-283.01, and that there was no violation of the parents' due process and equal protection rights guaranteed under the 5th and 14th Amendments to the U.S. Constitution; (3) in its termination of the parents' parental rights to Samantha under § 43-292(6) and (7) because the State did not allege those provisions as grounds for termination in the amended supplemental petition; (4) in its determination that the State proved by clear and convincing evidence that reasonable efforts failed to correct the conditions leading to adjudication under § 43-292(6) and (7) and that termination of the parents' parental rights is in the best interests of both children; and (5) in its determination that the State proved by clear and convincing evidence that the parents substantially and continuously neglected both children and refused to give both children necessary parental care and protection in accordance with § 43-292(2).

## STANDARDS OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in

conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Clifford M. et al., ante* p. 800, 606 N.W.2d 743 (2000); *In re Interest of Sarah K., ante* p. 52, 601 N.W.2d 780 (1999).

■ Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *In re Interest of Natasha H. & Sierra H., ante* p. 131, 602 N.W.2d 439 (1999).

## ANALYSIS

*Retroactive Application.*

The parents claim that their due process rights were violated by the retroactive application of §§ 43-292 and 43-283.01 as amended. This assignment of error is without merit.

Operative July 1, 1998, certain portions of the Nebraska Juvenile Code were amended. In particular, § 43-283.01 was added to the code, and it provided, inter alia, as follows:

(2) Except as provided in subsection (4) of this section, reasonable efforts shall be made to preserve and reunify families prior to the placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home.

. . . .

(4) Reasonable efforts to preserve and reunify the family are not required if a court of competent jurisdiction has determined that:

. . . .

(c) The parental rights of the parent to a sibling of the juvenile have been terminated involuntarily.

Section 43-292 was also amended. Prior to July 1, 1998, § 43-292(2) had provided for termination of parental rights if the parents "have substantially and continuously or repeatedly neglected the juvenile and refused to give the juvenile necessary parental care and protection." § 43-292(2) (Cum. Supp. 1996). Operative July 1, § 43-292(2) provided for termination if the parents "have substantially and continuously or repeatedly

neglected and refused to give the juvenile *or a sibling of the juvenile* necessary parental care and protection." (Emphasis supplied.) § 43-292(2) (Reissue 1998). Prior to July 1, § 43-292(7) had provided for termination based on out-of-home placement for 18 months or more and failure to correct conditions leading to the out-of-home placement. § 43-292(7) (Cum. Supp. 1996). Operative July 1, § 43-292(7) was amended to permit termination of parental rights if "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." § 43-292(7) (Reissue 1998).

By virtue of the State's allegations in its amended supplemental petition filed on September 24, 1998, the parents were notified that the State was seeking the termination of their parental rights as to both children under the amended code and in particular under § 43-292 as amended in 1998 and, consequently, that if termination were successful, reunification efforts would cease. Although the parents had notice that the State was proceeding under the amended version of the code, the parents did not raise a constitutional or other objection to proceedings under the amended code generally or § 43-292 as amended in particular either before or during the termination proceedings.

■ Generally, an appellate court will not consider a constitutional question on appeal that was not raised and properly presented for disposition by the trial court. *In re Interest of Rachael M. & Sherry M., ante* p. 250, 603 N.W.2d 10 (1999); *In re Interest of Kassara M., ante* p. 90, 601 N.W.2d 917 (1999). This is because a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *In re Interest of Kassara M., supra.* We have also recently stated that "[f]ailure to make a timely objection waives the right to assert prejudicial error on appeal." *Id.* at 94, 601 N.W.2d at 922. Accordingly, we do not address the parents' constitutional challenge presented for the first time on appeal concerning the retroactivity of the 1998 amendments to §§ 43-283.01 and 43-292.

*Reasonable Efforts at Reunification.*
■ The parents complain that the State failed to prove that it had provided them with adequate services and used reasonable efforts to reunite Samantha with them, as required under the

provisions of § 43-283.01. On appeal, the parents also attack the constitutionality of § 43-283.01. The record shows that the parents sought to invoke the benefits of the provisions of § 43-283.01 by availing themselves of a variety of social services and demanding additional social services and that on appeal, they both complained about the adequacy of the services and attacked the constitutionality of the statute pursuant to which those services were provided. We have held that a litigant who invokes the provisions of a statute may not challenge a statute's constitutionality as applied to that litigant in the same action during which the statute's protection is invoked. *State ex rel. Bellino v. Moore*, 254 Neb. 385, 576 N.W.2d 793 (1998); *State ex rel. Sileven v. Spire*, 243 Neb. 451, 500 N.W.2d 179 (1993). This assignment of error is, therefore, without merit.

*Termination of Parental Rights Under § 43-292(2).*

The parents assign as error a lack of clear and convincing evidence to terminate their parental rights as to both children under § 43-292(2). We conclude that the evidence was sufficient and that termination of the parents' parental rights under § 43-292(2) was in the best interests of both children.

In order to terminate parental rights with respect to a child on the basis of neglect under § 43-292(2), as amended, the State must prove by clear and convincing evidence that (1) the parents have substantially and continuously or repeatedly neglected and refused to give the child or a sibling of said child necessary parental care and protection and (2) termination of parental rights is in the best interests of the child. See, generally, *In re Interest of Natasha H. & Sierra H.*, ante p. 131, 602 N.W.2d 439 (1999); *In re Interest of Kassara M.*, ante p. 90, 601 N.W.2d 917 (1999); *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993). "Clear and convincing evidence" means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *In re Interest of Kalie W.*, ante p. 46, 601 N.W.2d 753 (1999).

Based upon our de novo review of the evidence, summarized in part below, we conclude that the record before us shows by clear and convincing evidence that the parents have substantially and continuously or repeatedly neglected and refused to give both children, siblings of one another, necessary parental care

and protection and that termination of parental rights as to both children is in the best interests of both children.

The record of the termination hearing consists of over 230 pages of testimony and 16 exhibits. The State called various witnesses who worked with the parents, including Child Protective Services workers, family support workers, and family therapists. These witnesses universally described the parents' unkempt household, lack of parenting skills, and failure to understand the basic needs of both children despite efforts to educate the parents regarding parenting skills.

Among the witnesses who testified was Harry DiLise, the first Child Protective Services worker assigned to the case. DiLise testified that despite DHHS-provided family support workers who attempted to help the parents with housekeeping, budgeting, and hands-on parenting skills, the parents made little progress from one review period to the next, allowing the condition of the home to continue to be unsanitary, failing to maintain a budget, and requiring a great deal of direction and supervision with Lisa during visits. DiLise felt that the parents could not provide adequate parenting without prompting.

Darin Nelson, another Child Protective Services worker assigned to the case, also testified that the parents' home was very unclean, that the parents missed numerous visitations with Lisa, and that the safety of both children would be jeopardized if they were placed with the parents.

Kay McMahon, a therapist-counselor assigned to the case, provided family counseling to the parents. She noted there was little emotional or physical interaction between Patricia and Lisa and that Lisa did not want to visit the parents and would be upset after visits. McMahon testified that during the 7 months she worked with the parents, "[t]hey were no more able to [parent] at the end of the seven months than at the beginning . . . ." She concluded that the parents did not possess the skills necessary to independently care for a child.

Sue Johnson, a family support worker, also testified. Johnson provided step-by-step demonstrations to the parents concerning how housekeeping tasks should be performed. She also created chore lists and schedules. Despite this assistance, Johnson testified that during her time working with the parents, the condition

of the home "deteriorated immensely." She further testified that in addition to the unkempt condition, there were safety concerns, with tools, knives, and cigarette lighters left out where Lisa could reach them. Johnson reported that despite her efforts to work with the parents on a household budget, they would spend their money on unnecessary personal items, such as cellular telephones and a pager. Johnson also provided the 14-day "crisis intervention" when Samantha was born, and she testified that despite daily, ongoing assistance, the parents were not able to retain parenting skills that were taught to them or independently handle their parenting responsibilities. It was at the end of this "crisis intervention" period that Samantha was placed in foster care.

Finally, therapists Jack Dunn and Ann Pearson testified. Dunn provided individual and family therapy to the parents. Dunn testified that as a result of events in Mark's childhood involving abuse and neglect, Mark had had little opportunity to be treated as a child, which concerned Dunn about Mark's ability to relate to his own children. Dunn further testified that as a result of abuse which Patricia had suffered as a child, Patricia "has very little emotional energy available for anyone else at this time." In visits Dunn had with Patricia when Lisa was present, Dunn witnessed essentially no connection between Lisa and Patricia. In Dunn's opinion, it was not possible for Patricia, in her current condition, to parent Lisa.

Pearson conducted a parenting assessment of the parents in June 1998, the goal of which was to assist the family with reunification. As part of the assessment, the parents were asked to complete certain assignments concerning basic nutrition and safety issues, which they failed to do. In Pearson's opinion, the parents seemed to have no emotional involvement in the parenting process and did not understand the importance of what was being asked of them. Pearson testified that at the time of her visit, the home was so cluttered, she recommended that an assessment be conducted to address safety concerns she had regarding the home. Pearson also observed that Lisa had no connection with her parents and that the parents had done nothing to prepare the household for the arrival of a newborn baby. She

testified that "at best," the parents had a minimal knowledge of parenting.

We note that the parents both testified as to their efforts at keeping the house clean. Also testifying on behalf of the parents was Cindy Heinsen, a friend of the parents, who claimed she visited them three or four times a week and the home was always clean. In its order terminating parental rights, the juvenile court questioned the credibility of this testimony given the amount of evidence to the contrary. On appeal, we give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Clifford M. et al., ante* p. 800, 606 N.W.2d 743 (2000); *In re Interest of Sarah K., ante* p. 52, 601 N.W.2d 780 (1999).

Based upon the foregoing evidence, we conclude that the record clearly and convincingly shows that the parents have neglected both children as contemplated by § 43-292(2). The record amply demonstrates that the parents have either ignored or been unable to apply the parenting skills to which they have been introduced by the professionals working with them. Several witnesses testified that the parents simply do not possess the necessary parenting skills nor have they learned the necessary skills to adequately care for both children, despite the provisions of DHHS designed to teach parenting. The record supports the conclusion that the parents have failed to bond with Lisa. The record clearly and convincingly demonstrates the parents' unwillingness or inability to put themselves in a position to provide the necessary care and protection which both children need and deserve. Further evidence of neglect is the parents' failure to complete simple tasks assigned to assist in a parenting assessment designed to reunify the family. Additionally, parental neglect is shown because there is no evidence that the parents have economically contributed to the maintenance of both children and that despite assistance provided by DHHS, the parents remain unable to prepare a household budget, but willingly spend funds on items of questionable necessity.

■ Considerable evidence was devoted to the unsanitary condition of the parents' household. In this regard, we recognize that "poor housekeeping, alone, is not a sufficient basis for terminating parental rights." *In re Interest of E.R., J.R., and A.R.,*

230 Neb. 646, 651, 432 N.W.2d 834, 838 (1988). However, as we have previously noted, when " 'poor housekeeping' degenerates into a continuing health hazard, the best interests of the children require termination of parental rights." *Id.* Parental neglect is amply demonstrated when, as in the instant case, despite abundant assistance, the parents fail to maintain a clean, safe, and healthy household. The parents' lack of skills to effectively care for their home is an endangerment to the health and safety of both children.

There is clear and convincing evidence of neglect of both children under § 43-292(2), as the juvenile court has concluded.

*Best Interests.*

In addition to showing by clear and convincing evidence that the parents have neglected both children under § 43-292(2), the State must also prove by clear and convincing evidence that it is in the best interests of both children to terminate the parental rights of the parents. See *In re Interest of Kassara M., ante* p. 90, 601 N.W.2d 917 (1999).

■ The evidence adduced during the termination hearing clearly and convincingly demonstrates that termination of the parents' parental rights is in the best interests of both children. Testimony from caseworkers, therapists, and a family support worker indicates that the parents do not possess the parenting skills necessary to care for both children nor have they learned the necessary skills to adequately care for both children, notwithstanding reasonable efforts to impart parenting skills to the parents. Thus, the best interests of both children are served by termination of the parents' rights and the permanent placement of both children in a setting in which they can receive care and nurturing. This court has repeatedly stated that a child cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Natasha H. & Sierra H., ante* p. 131, 602 N.W.2d 439 (1999); *In re Interest of Kassara M., supra; In re Interest of Joshua M. et al.,* 251 Neb. 614, 558 N.W.2d 548 (1997). We conclude there is clear and convincing evidence that it is in both children's best interests that the parents' parental rights be terminated under § 43-292(2).

926

*Termination Under § 43-292(6) and (7).*

■ Only one ground for termination need be proved in order for the parents' parental rights to be terminated. See *In re Interest of Kalie W.,* ante p. 46, 601 N.W.2d 753 (1999). In the instant case, termination under § 43-292(2) was proper as to both children. Because the propriety of termination of the parents' parental rights was sufficiently demonstrated pursuant to § 43-292(2) and we affirm on the basis of § 43-292(2), we need not consider the parents' assigned errors relating to the sufficiency of evidence under other statutory provisions identified by the trial court as grounds for termination of their parental rights. However, we rule that because termination as to Samantha was alleged only under § 43-292(2), the juvenile court erred when it terminated the parents' parental rights as to Samantha under § 43-292(6) and (7). See *In re Interest of Tina L.K. & Billy M.,* 3 Neb. App. 483, 528 N.W.2d 357 (1995).

## CONCLUSION

Based upon our de novo review of the record, we conclude that there is clear and convincing evidence that the parents have substantially and continuously or repeatedly failed to give both children necessary parental care and protection under § 43-292(2) and that there is clear and convincing evidence that termination is in the best interests of both children. Accordingly, we affirm the judgment of the juvenile court terminating the parental rights of the parents to both children pursuant to § 43-292(2).

JUDGMENT OF TERMINATION AFFIRMED.