IN RE INTEREST OF PHYLLISA B., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. SAMUEL B., APPELLANT.
654 N.W.2d 738

Filed December 20, 2002.   No. S-02-322.

Ann C. Mangiameli and Kurt Goudy, Senior Certified Law Student, of Nebraska Legal Services, Inc., for appellant.

Thomas K. Harmon, Special Prosecutor, of Respeliers and Harmon, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

The separate juvenile court of Douglas County terminated the parental rights of Samuel B. to his minor child Phyllisa B. pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 1998). Samuel appeals the termination of his parental rights. We affirm.

## STATEMENT OF FACTS

Samuel and Phyllis B. are the natural parents of Phyllisa, born on September 19, 1991. On or about October 21, 1998, Phyllisa was removed from her parents' care and placed in protective custody with the Nebraska Department of Health and Human Services (DHHS) by the Omaha Police Department due to allegations of an unsafe home environment. Specifically, Phyllisa had reported, in response to her elementary school teacher's inquiry as to why Phyllisa was falling asleep in class, that her father would come into her room late at night and " 'stick something in her mouth.' " After school officials called the police department to report Phyllisa's statement, Phyllisa told the investigating police officer that "her father came into her room and laid on top of her and 'humped her.' " Phyllisa also later reported that her brother, who is approximately 2 years older than Phyllisa, had sexual contact with her. Juvenile court proceedings were filed on October 21, 1998, and on the same date, the juvenile court ordered Phyllisa to be placed in DHHS' custody. She has remained in foster care in DHHS' custody continuously since that date.

In count II of its second amended adjudication petition filed on December 17, 1998, the State alleged as follows:

A. On or about October 20, 1998, [Phyllisa] disclosed that she was being subjected to inappropriate sexual contact by Samuel [B.]

B. Samuel [B.] continues to reside at the family residence.

C. Samuel [B.] has a past conviction for sexual assault on a child.

D. Samuel [B.]'s use of alcohol and/or controlled substances places [Phyllisa] at risk for harm.

E. Due to the above allegations, [Phyllisa] is at risk for harm.

At the adjudication hearing, following the testimony of several witnesses, including Phyllisa's elementary school teacher and a school counselor, Samuel pled no contest to paragraphs A, B, and E of count II. Near the end of the adjudication hearing, the State dismissed paragraphs C and D of count II.

In an order filed February 26, 1999, the juvenile court determined that Phyllisa was a child as described in Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998), being under the age of 18 years and lacking proper parental care by reason of the faults or habits of Samuel. In its adjudication order, the juvenile court found that on or about October 20, 1998, Phyllisa disclosed that she was subjected to inappropriate sexual contact by Samuel, that Samuel continues to reside at the family residence, and that due to these allegations, Phyllisa is at risk for harm. Samuel did not appeal the juvenile court's adjudication order. In an additional order filed March 4, 1999, the juvenile court also determined that Phyllisa was a child as described in § 43-247(3)(a) by reason of the faults or habits of Phyllis. The parental rights of Phyllis are not at issue in this appeal.

A disposition hearing was held on July 7, 1999, followed by review hearings on January 25 and August 30, 2000, and February 8 and August 3, 2001. In orders entered following each of these hearings, the juvenile court found that the permanency objective was reunification, with a concurrent plan of adoption. In order to meet the reunification plan, Samuel was ordered, inter alia, (1) to have no contact or communication with Phyllisa pending further order of the court, (2) to participate in and successfully complete individual and family therapy to address the

sexual abuse of Phyllisa, and (3) to submit to random drug screens. In particular, in its order entered following the January 25, 2000, review hearing, the juvenile court ordered Samuel to "obtain meaningful therapy and rehabilitation to correct the findings of the adjudication that places [Phyllisa] and [Samuel] under the jurisdiction of the Court." Similar language was contained in subsequent orders. Comparable orders were entered as to Phyllis.

On June 7, 2001, the State filed a "Motion for Termination of Parental Rights and Notice of Hearing." The motion sought termination of both Samuel's and Phyllis' parental rights under § 43-292(2), (6), and (7). The motion also asserted that termination of parental rights was in Phyllisa's best interests.

Section 43-292(2) requires a finding that the parent has substantially and continuously or repeatedly neglected or refused to give the juvenile necessary parental care and protection. Section 43-292(6) requires a finding that following a determination that the juvenile is one as described in § 43-247(3)(a), reasonable efforts to preserve and unify the family under the direction of the court have failed to correct the conditions leading to the determination. Section 43-292(7) requires a finding that the juvenile has been in out-of-home placement for 15 or more of the most recent 22 months.

On February 19, 2002, the State's motion for termination came on for hearing before the juvenile court. In a written order filed February 21, the juvenile court found that the State had proved by clear and convincing evidence the grounds for termination set forth in § 43-292(2), (6), and (7). The juvenile court further found that it was in Phyllisa's best interests that Samuel's and Phyllis' parental rights be terminated. Accordingly, the juvenile court terminated Samuel's and Phyllis' parental rights to Phyllisa. Samuel appeals.

## ASSIGNMENTS OF ERROR

On appeal, Samuel alleges three assignments of error. Samuel alleges, renumbered and restated, that the juvenile court erred (1) in granting the State's motion to terminate Samuel's parental rights in violation of his Fifth Amendment privilege against self-incrimination, (2) in finding that the State proved by clear

and convincing evidence under § 43-292(2) that Samuel had substantially and continuously or repeatedly neglected and refused to give Phyllisa necessary parental care and protection, and (3) in finding that the State proved by clear and convincing evidence under § 43-292(6) that reasonable efforts had failed to correct the conditions leading to the adjudication of Phyllisa. We note that although Samuel raises a constitutional objection on appeal, he does not dispute the juvenile court's finding that Phyllisa had been in out-of-home placement for "over three years," which fact would serve as a basis for termination under § 43-292(7).

## STANDARDS OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the juvenile court's findings; however, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Sabrina K.*, 262 Neb. 871, 635 N.W.2d 727 (2001). Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000).

## ANALYSIS

*Constitutional Objection.*

On appeal, Samuel claims that compliance with various plan provisions would require that he admit to sexual contact with Phyllisa and that such terms would violate his right to exercise his Fifth Amendment privilege against self-incrimination. Samuel suggests on appeal that Phyllisa was continued in out-of-home placement due, in part, to Samuel's refusal to admit to sexual contact with Phyllisa. In this regard, we note that the record shows that the juvenile court's orders with regard to the reunification plan to obtain "meaningful therapy" employed the language of *In re Interest of Clifford M. et al.*, 6 Neb. App. 754, 577 N.W.2d 547 (1998), and that the termination order of February 21, 2002, states that "the parents still have not sufficiently progressed rehabilitatively."

■ The record provided on appeal does not reflect that Samuel raised his constitutional objection in the proceedings before the juvenile court. Generally, an appellate court will not consider a constitutional question on appeal that was not raised and properly presented for disposition by the trial court. *In re Interest of Lisa W. & Samantha W., supra; In re Interest of Rachael M. & Sherry M.,* 258 Neb. 250, 603 N.W.2d 10 (1999). This is because a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *In re Interest of Lisa W. & Samantha W., supra.* We have also stated that "[f]ailure to make a timely objection waives the right to assert prejudicial error on appeal." *In re Interest of Kassara M.,* 258 Neb. 90, 94, 601 N.W.2d 917, 922 (1999). Accordingly, we do not address Samuel's constitutional objection presented for the first time on appeal concerning his Fifth Amendment privilege against self-incrimination.

*Termination of Parental Rights Under § 43-292(7).*
■ The juvenile court found that all three of the grounds for termination alleged in the State's motion, § 43-292(2), (6), and (7), were proved by the State. In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of DeWayne G. & Devon G.,* 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Clifford M. et al.,* 261 Neb. 862, 626 N.W.2d 549 (2001). Our de novo review of the record shows that termination of Samuel's parental rights was sufficiently demonstrated pursuant to § 43-292(7), and we affirm on the basis of § 43-292(7). Accordingly, we need not consider Samuel's assigned errors relating to the sufficiency of evidence under other statutory provisions identified by the juvenile court as grounds for termination of his parental rights. See, *In re Interest of DeWayne G. & Devon G., supra; In re Interest of Clifford M. et al., supra; In re Interest of Lisa W. & Samantha W.,* 258 Neb. 914, 606 N.W.2d 804 (2000).

Section 43-292(7) requires that the child in question be in out-of-home placement for 15 or more of the most recent 22 months to support termination based on § 43-292(7). The record reflects that at the time of the termination hearing, Phyllisa had

been in continuous foster care for approximately 40 months. The only remaining issue is whether termination of Samuel's parental rights is in Phyllisa's best interests. The record amply demonstrates that termination of Samuel's parental rights is in Phyllisa's best interests.

On February 26, 1999, the juvenile court determined that Phyllisa was a child within the meaning of § 43-247(3)(a) based on the court's factual findings that Phyllisa had disclosed that she was subjected to inappropriate sexual contact by Samuel and that Samuel still lived in the home. As a result of these findings, the juvenile court determined that Phyllisa was at risk, adjudicated Phyllisa, and ordered that Phyllisa should remain in the care and custody of DHHS. An adjudication order is a final, appealable order. See *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). The record reflects that Samuel did not appeal the juvenile court's adjudication order indicating that Phyllisa was a child at risk due to the fact Phyllisa had claimed that Samuel had subjected her to inappropriate sexual contact and that Samuel lived in the home. In the absence of a direct appeal from an adjudication order, a parent may not question the existence of facts upon which the juvenile court asserted jurisdiction. *In re Interest of Brook P. et al.*, 10 Neb. App. 577, 634 N.W.2d 290 (2001).

At the February 19, 2002, termination hearing, the State called six witnesses to testify: Tina Flowers, Phyllisa's therapist; Cheryl Felix, Phyllis' therapist; Kathie McDaniel, Samuel's therapist; Letitia Kopp, Phyllisa's foster care specialist; and Nicole Rogert and Jennifer Bivens, DHHS child protection and safety workers assigned to Phyllisa's case. The State also introduced into evidence exhibit 30, which was composed of certified copies of the petitions and orders in the case. Phyllis testified on her own behalf. Samuel did not testify or call any witnesses or introduce any exhibits into evidence.

During the termination hearing, Flowers testified as to Phyllisa's conduct that supported Phyllisa's claim that she had been subjected to inappropriate sexual contact by Samuel, including that Phyllisa wet her bed nightly, had "ongoing nightmares regarding sucking men's penises [and] having sexual relations with men," and masturbated publicly. Flowers testified that

she could not explain this conduct as signifying anything other than that Phyllisa had been sexually molested. Although Flowers testified that Phyllisa had subsequently recanted her earlier statement that she had been subjected to inappropriate sexual contact by Samuel, Flowers responded "[y]es" when asked if it was normal for children who initially tell the truth regarding allegations of sexual molestation to later recant those statements. According to Flowers, Phyllisa's recantation was normal "especially since it's a parental figure [and] she wants to go home."

On appeal, Samuel disputes that the inappropriate contact occurred. The record shows that Samuel has not participated in meaningful therapy and rehabilitation relating to the molestation issue. The record further reflects that Samuel remains in the family home. Finally, the record reflects that Kopp testified that it would not be in Phyllisa's best interests to be returned to her family home and that Flowers and Bivens both testified that termination of Samuel's parental rights was in Phyllisa's best interests.

■ We have stated that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Based upon the evidence, we conclude that the record clearly and convincingly shows that at the time of the termination hearing, Phyllisa had been in out-of-home placement for 15 or more of the most recent 22 months and that termination of Samuel's parental rights was in Phyllisa's best interests. Accordingly, we affirm the juvenile court's order terminating Samuel's parental rights as to Phyllisa pursuant to § 43-292(7).

## CONCLUSION

Based upon our de novo review of the record, we conclude that there is clear and convincing evidence that Samuel's parental rights should be terminated pursuant to § 43-292(7) and that such termination is in Phyllisa's best interests. Accordingly, the judgment of the juvenile court is affirmed.

AFFIRMED.