IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


IN RE INTEREST OF CHERISH R. & CHARLIZE R.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


IN RE INTEREST OF CHERISH R. AND CHARLIZE R.,
CHILDREN UNDER 18 YEARS OF AGE.


STATE OF NEBRASKA, APPELLEE,

V.

CHANCE R., APPELLANT.


Filed March 24, 2020.    No. A-19-866.


Appeal from the Separate Juvenile Court of Douglas County: CHRISTOPHER E. KELLY, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Samuel A. Raybine for appellant.

Natalie Killion and Nathan Klein, Deputy Douglas County Attorneys, for appellee.


PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

### INTRODUCTION

Chance R., the father of Cherish R. and Charlize R., appeals from an order of the Separate Juvenile Court of Douglas County terminating his parental rights. We affirm.

### BACKGROUND

Chance and Darae M. had two children together, Cherish, born in 2012, and Charlize, born in 2015. In October 2015 the family was riding in their vehicle; Darae was driving. Chance reached

over and grabbed the steering wheel and drove the car into oncoming traffic. Darae suffered a broken hip and other injuries and was hospitalized for over a month. A passenger in the oncoming car was seriously injured as well. Cherish and Charlize were transported to the hospital where it was determined they were uninjured. The children left the hospital and were placed in foster care with a paternal aunt. The children were later placed with their maternal grandmother where they remained until Darae was recovered enough to care for them on her own. The children were later removed from Darae in 2017 and again placed with the maternal grandmother, where they remained at the time of the termination trial in August 2019.

Chance was apprehended at the scene and jailed. In October 2016, Chance was sentenced to 8 to 16 years' imprisonment for second degree assault, a Class IIA felony. Chance was incarcerated in the Community Corrections Center in Omaha prior to July 2019. While on a "furlough" to his sister's house in Omaha he consumed alcoholic beverages and failed a breathalyzer upon return to Community Corrections. Chance was then transferred to a more secure facility in Omaha. At the time of the termination trial in August 2019, Chance did not have a date certain for parole although he testified he was eligible as early as September or October. Chance testified his earliest "release" date, without supervision, was 2023.

## ASSIGNMENTS OF ERROR

Chance assigns the juvenile court erred in terminating his parental rights because the State based its motion for termination solely on the fact that he was incarcerated, and that the State failed to adduce clear and convincing evidence that termination was in his children's best interests.

## STANDARD OF REVIEW

An appellate court tries factual questions de novo on the record, which requires an appellate court to reach a conclusion independent of the findings of the trial court. *In re Interest of Tyler T.*, 279 Neb. 806, 781 N.W.2d 922 (2010). But when evidence is in conflict, an appellate court considers and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts rather than another. *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015). When the parties contest the validity of the evidence presented to the trial court, the reviewing court should give deference to the trial court's determination of the credibility of witnesses. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006).

## ANALYSIS

### STATUTORY GROUNDS FOR TERMINATION

The State's motion to terminate Chance's parental rights alleged Cherish and Charlize came within 5 of the 11 grounds for termination of parental rights and that it was in the best interests of the children that Chance's parental rights be terminated. See Neb. Rev. Stat. § 43-292(1), (2), (6), (7), and (9) (Reissue 2016). Chance does not assign as error the juvenile court's finding that the children come within the meaning of § 43-292(1), (2), (7) and (9) but instead, he complains his children come within the meaning of § 43-292 "only because" he is incarcerated.

We agree that while incarceration alone cannot be the sole basis for terminating parental rights, it is a factor to be considered. See *In re Interest of Jahon S.*, 291 Neb. 97, 864 N.W.2d 228 (2015). And the Nebraska Supreme Court has noted that although incarceration itself may be involuntary as far as a parent is concerned, the criminal conduct causing the incarceration is voluntary. *In re Interest of Kalie W.*, 258 Neb. 46, 601 N.W.2d 753 (1999). Thus, in a case involving termination of parental rights, it is proper to consider a parent's inability to perform his or her parental obligations because of incarceration. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002).

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of DeWayne G. & Devon G., supra*. Our de novo review of the record shows the State has proved by clear and convincing evidence that both children have been in out-of-home placement for 15 or more months of the last 22 months. In 2017, the children were placed with their grandmother, where they remained at the time of the termination trial in August 2019. Having determined the statutory ground enumerated in § 43-292(7) has been proved, we do not consider issues relating to the sufficiency of the evidence concerning the other statutory provisions identified by the trial court as grounds for termination. See *In re Interest of Lisa W. & Samantha W.*, 258 Neb. 914, 606 N.W.2d 804 (2000).

BEST INTERESTS

Section 43-292 requires that parental rights can be terminated only when the court finds that termination is in the child's best interests. A termination of parental rights is a final and complete severance of the child from the parent and removes the entire bundle of parental rights. *In re Interest of Crystal C.*, 12 Neb. App. 458, 676 N.W.2d 378 (2004). Therefore, with such severe and final consequences, parental rights should be terminated only "'[i]n the absence of any reasonable alternative and as the last resort. . . .'" *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 467, 598 N.W.2d 729, 741 (1999). However,

> [w]here a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002). Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Phyllisa B.*, 265 Neb. 53, 654 N.W.2d 738 (2002).

*In re Interest of Athina M.*, 21 Neb. App. 624, 631, 842 N.W.2d 159, 164 (2014).

Chance is incarcerated because he committed a violent felony against Darae and placed the children at risk of harm in the process. Darae was hospitalized for a month with a broken hip after Chance grabbed the steering wheel of the family car and drove into oncoming traffic. Chance's criminal conduct was a voluntary act, and as a consequence, Chance put himself in a position where he could not offer his "presence, care, love, protection, maintenance, and opportunity for displaying parental affection." *In re Interest of B.A.G.*, 235 Neb. 730, 735, 457 N.W.2d 292, 297 (1990).

In an effort to stay involved in the children's lives, Chance testified he sent a family representative to the maternal grandmother's home at Christmas 2018 to deliver gifts for the children. He testified he had funds available from a savings account. The maternal grandmother acknowledged gifts were delivered to her home but she believed the gifts were from his "family" since the representative did not specify the gifts were from Chance. The grandmother testified there have been no similar deliveries since. The grandmother testified her contact information had not changed since 2015 so Chance could have sent cards and letters to the children but he did not. While the grandmother testified she was unwilling to allow Chance to speak to the girls, nothing prevented him from calling her for updates. We believe the court could have found the evidence clearly establishes Chance did not make sufficient efforts to maintain a beneficial relationship with the children.

With parole eligibility on the horizon, Chance violated one of the rules of his "furlough" by consuming alcoholic beverages while in the community. Chance knew he was breaking the rules and yet, he persisted. This rule violation caused Chance's placement in a more secure facility, and may have jeopardized his parole date. We believe the court could have found Chance was not serious about being a parent since he knowingly engaged in behavior which could have prolonged his incarceration. We are persuaded Chance's reckless and defiant behavior is clear evidence of his unwillingness to make himself available to his children and persuades us the State proved by clear and convincing evidence that termination of Chance's parental rights was in the best interests of Cherish and Charlize.

## CONCLUSION

The juvenile court's order terminating Chance's parental rights is affirmed.

AFFIRMED.