IN RE INTEREST OF JOSHUA R. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V.
ANGELA R., APPELLANT.
657 N.W.2d 209

Filed February 28, 2003. Nos. S-02-253 through S-02-257.

Robert B. Creager and Jonathan M. Braaten, of Anderson, Creager & Wittstruck, P.C., for appellant.

Randy R. Stoll, York County Attorney, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

On January 31, 2002, the York County Court, sitting as a juvenile court, entered an order terminating the parental rights of Angela R. to her five minor children, Joshua R., Glorianna R., Shaughnessy R., deChelly R., and Desmarais R., pursuant to Neb. Rev. Stat. § 43-292(2), (6), and (7) (Reissue 1998). In these consolidated cases, Angela appeals the termination of her parental rights. We affirm.

## STATEMENT OF FACTS

Angela is the natural mother of the following five minor girls: Joshua, born on August 30, 1988; Glorianna, born on May 27, 1990; Shaughnessy, born on July 24, 1997; deChelly, born on July 24, 1998; and Desmarais, born on November 8, 1999. Angela is also the mother of a son who evidently died of an asthma attack in 1996 at the age of 10 and a daughter who was born after Desmarais and is not subject to these proceedings. According to the record, the five children in these proceedings have four different fathers, none of whom are parties to these appellate proceedings.

On November 30, 1999, all five children were removed from Angela's care and placed in protective custody with the Nebraska Department of Health and Human Services (DHHS) by the York Police Department due to allegations of neglect and lack of proper parental care. All five children have remained in foster care in the custody of DHHS since that date.

On December 1, 1999, five separate petitions were filed, one as to each of the above-named children, alleging that the subject child was a juvenile as described under Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1998). The five proceedings were consolidated below and on appeal. An adjudication hearing was held on December 16. In the court's December 17 order, each child was adjudicated a juvenile within the meaning of § 43-247(3)(a). The court made numerous findings, including the following:

> [O]n November 24th, 1999, Officer Roger Wolfe of the York Police Department went to [Angela's] residence . . .

at about 1:15 p.m. The Officer entered the house . . . . It was obvious to the Officer that the family was just getting out of bed . . . . The Officer asked [Angela] why Glorianna . . . was not in school that day. [Angela] advised the Officer that Joshua was supposed to go to the doctor that afternoon . . . and that the school knew about that. [The Officer] then contacted the school and was advised that the school had no idea why the child was not in school. The Officer was advised that Glorianna and Joshua missed the bus.

. . . .

The Officer and a [DHHS] representative . . . went to the home to check on the two younger children on November 29, 1999. They determined from the school that Joshua . . . had been taken out [of] school to go to the Clinic. The Officers [sic] found Joshua . . . at the Clinic waiting alone. The time period is disputed between [the] parties, but in any event [Joshua] was left alone for a period of time.

Glorianna and Joshua . . . were interviewed. They indicated that they did most of the housework at their home and mixed all of the formula prior to going to bed at night. . . .

The Officer determined that Joshua . . . had missed sixteen days of school during the current year all of which were unexcused absences. [Angela] advised the Officer that it was because the girls missed the bus ast [sic] they didn't get out there in time. [Angela] didn't feel that it was her problem that the children were not making the bus in time. . . .

The Juveniles indicated that they rarely eat breakfast except on days that they don't have school. They also indicated that when they have school, the only meal that is served in the home is served late in the evening.

When [a DHHS worker] checked Desmarais she found the juvenile had a terrible diaper rash. . . . Desmarais was five and half pounds at birth and one month later is now six pounds.

Based upon these and other factual findings as to each juvenile, the court adjudicated the five children. Angela did not appeal the adjudication order.

A hearing was held on January 27, 2000, and a disposition order was entered on February 7, setting forth a rehabilitation

plan for Angela and spelling out a number of goals, which can be summarized as including attending mental health counseling, acquiring anger management skills, acquiring parenting skills, and improving finances. The permanency objective was reunification. Angela did not appeal the disposition order establishing the rehabilitation plan. Periodic dispositional hearings were held. In orders filed on May 24 and December 15, the court continued the original plan and goals with minor changes.

A permanency hearing was held on December 13, 2000, and continued on January 18 and February 13, 2001. In an order filed on April 26, the court determined that based upon the evidence presented at the hearing, which included testimony from a family support worker and the DHHS caseworker assigned to the children, it was "inappropriate to continue to consider reunification with [Angela] and that the proper permanency plan [was for] the state [to file] a petition for termination of parental rights as to each of the [children]." The court concluded that "after more than 15 months, [Angela had] failed to show that she can or will acknowledge the situation or that she would cooperate in a reasonable way to solve the problems which brought about the cases concerning [the children]."

On May 29, 2001, Angela filed a notice of appeal in each of the cases, seeking to appeal the court's April 26 order changing the permanency objective from reunification to termination of parental rights. The Nebraska Court of Appeals dismissed the appeals as untimely, having been filed more than 30 days after the entry of the order appealed from. See *In re Interest of DeChelly R. et al.*, 10 Neb. App. xliv (Nos. A-01-685 through A-01-689, July 31, 2001).

On May 17, 2001, the State filed motions for termination of parental rights in each of the five children's proceedings. The motions were essentially identical, and each sought termination of Angela's parental rights under § 43-292(2), (4), (6), and (7). The motions also asserted that termination of parental rights was in each of the children's best interests.

Section 43-292(2) requires a finding that the parent has substantially and continuously or repeatedly neglected or refused to give the juvenile or a sibling of the juvenile necessary parental care and protection. Section 43-292(4) requires a finding that the

parent is unfit by reason of conduct which is seriously detrimental to the health, morals, or well-being of the juvenile. Section 43-292(6) requires a finding that following a determination that the juvenile is one as described in § 43-247(3)(a), reasonable efforts to preserve and unify the family under the direction of the court have failed to correct the conditions leading to the determination. Section 43-292(7) requires a finding that the juvenile has been in out-of-home placement for 15 or more of the most recent 22 months.

On December 20, 2001, and continuing on December 21, the State's motions for termination came on for hearing. Angela was present and represented by counsel. A total of 13 witnesses testified. Documentary evidence was received. Several witnesses testified on behalf of the State, including the children's DHHS caseworker; Angela's mental health therapist; and a family support worker. In general, the State's evidence can be summarized as establishing that Angela failed to attend therapy, was inattentive to her children during visits, and seemed unconcerned with matters concerning the children's health and welfare. One witness testified that Angela did not demonstrate a consistent pattern of behavior, discipline, or structure during her visits with her children. The State introduced evidence that during meetings with her children, Angela became distracted, and that her attention would frequently have to be redirected to her children.

Evidence was introduced with regard to each child, some of which we summarize below. The record reflects that Joshua has been diagnosed with "Post Traumatic Stress Disorder" and has a history of "Oppositional Defiant Disorder." Joshua's therapist testified that Joshua is intelligent, but when she became negative or depressed, her performance in her schoolwork went from an "A" to an "F." According to the therapist, Joshua reacted to adverse situations with anger, had issues with trust, tended to isolate herself, and had poor decisionmaking skills. Glorianna was described by a witness as being very bright but suffering from disorganization and an inability to stay on task, which characteristics were more severe than those typically exhibited by adolescents. Evidence was also adduced that both Joshua and Glorianna had been abused in the past by one of Angela's

boyfriends and that both girls had been removed from Angela's custody and placed under DHHS' care and supervision on three prior occasions.

With regard to Shaughnessy, the record reflects that she suffers from a hearing deficiency. According to evidence received by the court during the termination hearing, Shaughnessy was examined by a doctor on January 19, 2000, shortly after she was taken from Angela's custody. Shaughnessy was "found to have cockroaches embedded in her ears," and the cockroaches were subsequently removed. The doctor believed this condition may have led to Shaughnessy's hearing deficiency. As a result of her hearing deficiency, Shaughnessy suffers from substantial developmental problems. Her speech and gross motor skills are impaired, and she has been characterized as requiring a great deal of individual attention and care.

With regard to deChelly, the record reflects that Angela fails to relate to this child. For example, during deChelly's visits with Angela, Angela would ignore the child's requests to use the restroom, relying on support workers to take deChelly to the bathroom. On one occasion, Angela failed to react when the child followed an older sister into the street. A support worker had to respond and stop deChelly.

With regard to Desmarais, the youngest child subject to these proceedings, evidence introduced during the termination hearing indicated that when Desmarais was initially taken into custody, she was 1-month old and weighed 6 pounds. Approximately 6 weeks after she was removed from Angela's care, her weight had almost doubled. Desmarais' caseworker reported that when Desmarais was born, "she 'just shook from nicotine withdrawals.' "

Invoking the language of § 43-292, in a written order filed January 31, 2002, the court found that the State had proved by clear and convincing evidence the grounds for termination set forth in § 43-292(2), (6), and (7). The court further found that it was in the children's best interests that Angela's parental rights be terminated. Accordingly, the court terminated Angela's parental rights to Joshua, Glorianna, Shaughnessy, deChelly, and Desmarais. Angela appeals.

## ASSIGNMENTS OF ERROR

On appeal, Angela asserts several assignments of error, which we restate as four. Angela asserts, renumbered and restated, that (1) she was denied due process by virtue of ineffective assistance of counsel as a result of trial counsel's failure to perfect an appeal of the April 26, 2001, order which changed the permanency objective from reunification to termination of parental rights, (2) the court erred in finding that the State proved by clear and convincing evidence under § 43-292(2) that Angela had substantially and continuously or repeatedly neglected and refused to give the children or a sibling of the children necessary parental care and protection, (3) the court erred in finding that the State proved by clear and convincing evidence under § 43-292(6) that reasonable efforts had failed to correct the conditions leading to the adjudication of the children, and (4) the court erred in finding that the State proved by clear and convincing evidence that termination of Angela's parental rights was in the children's best interests. We note that Angela does not dispute the court's finding that the children had been in out-of-home placement "since November 30th, 1999," which fact would serve as a factual basis for termination under § 43-292(7). In our analysis, we consider assignments of error Nos. 2, 3, and 4 together.

## STANDARDS OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Ty M. & Devon M., ante* p. 150, 655 N.W.2d 672 (2003); *In re Interest of Phyllisa B., ante* p. 53, 654 N.W.2d 738 (2002). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.* Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting termination and that termination is in the juvenile's best interests. *In re Interest of Phyllisa B., supra.*

## ANALYSIS

*Due Process and "Effective Assistance of Counsel."*

On appeal, Angela claims generally that she was denied due process by virtue of ineffective assistance of counsel. Her specific complaint relates to her trial attorney's failure to properly appeal from the court's April 26, 2001, order changing the permanency objective from reunification to termination of parental rights. Assuming without deciding that the April 26 order was an appealable order, see *In re Guardianship of Rebecca B. et al.*, 260 Neb. 922, 621 N.W.2d 289 (2000), and *In re Interest of Sarah K.*, 258 Neb. 52, 601 N.W.2d 780 (1999), we conclude that Angela was not denied due process, and accordingly, we find no merit to this assignment of error.

In support of her assignment of error, Angela notes that she was entitled to have counsel represent her in these juvenile proceedings under Neb. Rev. Stat. § 43-279.01(1)(b) (Reissue 1998), and because she is statutorily entitled to counsel, Angela asserts that it "necessarily follows" that such counsel should provide effective assistance and that she was denied due process by virtue of her trial attorney's failure to properly appeal. Brief for appellant at 32. Section 43-279.01 provides in pertinent part as follows:

(1) When the petition alleges the juvenile to be within the provisions of subdivision (3)(a) of section 43-247 or when termination of parental rights is sought pursuant to subdivision (6) or (7) of section 43-247 and the parent or custodian appears with or without counsel, the court shall inform the parties of the:

. . . .

(b) Right to engage counsel of their choice at their own expense or to have counsel appointed if unable to afford to hire a lawyer.

Initially, we observe that juvenile proceedings are civil rather than criminal in nature, see *In re Interest of Destiny S.*, 263 Neb. 255, 639 N.W.2d 400 (2002), and that we have previously stated that an individual has no constitutional right to effective assistance of counsel in a civil proceeding, *Ernest v. Jensen*, 226 Neb. 759, 415 N.W.2d 121 (1987) (civil action involving license revocation). See, also, *State v. Gray*, 259 Neb. 897, 612 N.W.2d

507 (2000) (civil action involving petition for postconviction relief). In addition, we have ruled that a statutory right to the appointment of counsel does not give rise to an ineffective assistance of counsel claim in a civil postconviction case. See *State v. Becerra*, 263 Neb. 753, 642 N.W.2d 143 (2002). We have, however, acknowledged that due process is required in cases involving termination of parental rights, and we analyze Angela's claim under due process principles.

We have recently addressed a parent's due process rights during termination proceedings. In *In re Interest of Ty M. & Devon M., ante* p. 150, 158, 655 N.W.2d 672, 681 (2003), we stated: " '[S]tate intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause.' " (Quoting with approval *In re Interest of Kantril P. & Chenelle P.*, 257 Neb. 450, 598 N.W.2d 729 (1999)). We also recognized:

> "Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker."

*In re Interest of Ty M. & Devon M., ante* at 158, 655 N.W.2d at 681 (quoting *In re Interest of Kelley D. & Heather D.*, 256 Neb. 465, 590 N.W.2d 392 (1999)).

In the instant case, Angela claims in effect that because her counsel filed an untimely appeal of the court's order changing the permanency objective from reunification to termination of parental rights, she was denied due process. Angela's argument ignores, however, that she was given notice and a full opportunity to litigate the issue of the termination of her parental rights when the State's termination motions came on for trial on December 20 and 21, 2001.

The record reflects that Angela received proper notice of the termination hearing and that during the 2-day termination hearing, Angela appeared and was represented by counsel. Angela's counsel introduced evidence and cross-examined witnesses on

Angela's behalf. The record further reflects that Angela testified at the hearing in opposition to the State's motions to terminate parental rights. Finally, following the hearing, the court issued an eight-page order, detailing the court's findings of fact and conclusions of law with regard to the State's motions and determining that the State had proved by clear and convincing evidence that the grounds for termination set forth in § 43-292(2), (6), and (7) had been established as to each child. Based on this record, we conclude that Angela was afforded due process. See *In re Interest of Ty M. & Devon M., supra.* This assignment of error is without merit.

*Statutory Basis for Termination of Parental Rights and Best Interests.*

The court found that three of the grounds for termination alleged in the State's motions, § 43-292(2), (6), and (7), were proved by the State. The court concluded that the evidence did not support the State's allegation that Angela's parental rights should be terminated pursuant to § 43-292(4). Angela challenges the court's determinations that the State had established statutory bases for termination of her parental rights and further challenges the court's conclusion that termination is in the children's best interests. We find no merit to these arguments.

In order to terminate parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the child's best interests. *In re Interest of Phyllisa B., ante* p. 53, 654 N.W.2d 738 (2002); *In re Interest of DeWayne G. & Devon G.,* 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Clifford M. et al.,* 261 Neb. 862, 626 N.W.2d 549 (2001). Because we conclude below that the propriety of termination of Angela's parental rights was sufficiently demonstrated pursuant to § 43-292(7), and we affirm on the basis of § 43-292(7), we need not consider Angela's assigned errors relating to the sufficiency of evidence under other statutory provisions identified by the court as grounds for termination of her parental rights. See, *In re Interest of DeWayne G. & Devon G., supra; In re Interest of Lisa W. & Samantha W.,* 258 Neb. 914, 606 N.W.2d 804 (2000).

The record reflects and Angela does not dispute that at the time of the termination hearing, all five of the children had been in continuous foster care for approximately 24 months, thereby satisfying the requirement under § 43-292(7) that they be in out-of-home placement for 15 of the last 22 months. The remaining issue is whether terminating Angela's parental rights is in the children's best interests.

In its December 17, 1999, order, the court determined that the children were juveniles within the meaning of § 43-247(3)(a). Due to Angela's inability to parent, the children's safety was in danger, and the court determined that the children were at risk, adjudicated the children, and ordered that the children should remain in DHHS' care and custody. Following the adjudication, in an order filed on February 7, 2000, the court approved a rehabilitation plan for Angela, which plan spelled out a number of goals for Angela, including attending mental health counseling, acquiring anger management skills, acquiring parenting skills, and improving finances. A dispositional order imposing a rehabilitation plan for parents in a juvenile case is a final, appealable order. *In re Interest of Tabatha R.*, 255 Neb. 818, 587 N.W.2d 109 (1998). Angela did not appeal the court's February 7 order. In subsequent orders, the court continued with the original rehabilitation plan and goals with minor changes. Eventually, the objective of the plan was changed from reunification to termination.

The obvious objective of the rehabilitation plan was to correct the deficiencies in parenting exhibited by Angela, which corrections would benefit the children. However, the record reflects that Angela failed to demonstrate improvement. For example, although individual therapy was made available to Angela, the record reflects that in 2000, she attended 15 percent of her scheduled counseling appointments, and in 2001, she failed to attend any appointments. In this connection, the court found that Angela "had failed to use . . . therapy to address the issue of her family" and that thus, Angela's ability to establish a healthy relationship with her children had not improved.

With respect to the financial support required to provide for her children, the record shows that Angela worked for five different employers in 2000 and three different employers in 2001. Her total earnings in 2000 were $4,162.51, and in 2001, she earned

$1,611.50. The court concluded that Angela had not shown an ability to keep steady employment and that thus, Angela had failed to demonstrate that she could provide basic financial support for her children.

During the period of time the children were removed from Angela's care, the record shows that Angela failed to improve her parenting skills. In 2001, Angela attended 29 percent of her scheduled visits with the children. The visits were held outside of Angela's residence due to unsanitary conditions, and during such visits, Angela was unable or unwilling to supervise or care for the children. According to the record, agency workers who accompanied the children on their visits with Angela found it necessary to

> continue to provide for the safety of the children during visitation. The workers also report[ed] Angela has demonstrated favoritism with her children. Joshua is talked to and Shaughnessy is played with. [Glorianna] will beg for attention and [Angela] will ignore her. [Desmarais] is rarely held by Angela. . . . During visitation the workers will be the ones cutting up the food, assisting with feeding and providing drinks. Angela continue[d] to leave the visits for smoke breaks and using the phone. She often does not tell the workers, she just disappears.

The totality of the record shows that Angela is unable to provide basic parental care for her children.

We have stated that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Based upon the foregoing evidence, we conclude that the record clearly and convincingly shows that at the time of the termination hearing, Joshua, Glorianna, Shaughnessy, deChelly, and Desmarais had been in out-of-home placement for at least 15 of the most recent 22 months, and that termination of Angela's parental rights is in the children's best interests. Accordingly, we affirm the court's order terminating Angela's parental rights as to Joshua, Glorianna, Shaughnessy, deChelly, and Desmarais pursuant to § 43-292(7).

## CONCLUSION

We conclude that Angela was not denied due process. Based upon our de novo review of the record, there is clear and convincing evidence that Angela's parental rights to Joshua, Glorianna, Shaughnessy, deChelly, and Desmarais should be terminated pursuant to § 43-292(7) and that such termination is in the children's best interests. Accordingly, the judgment of the county court terminating such rights is affirmed.

AFFIRMED.