IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF MARIEANNA N.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF MARIEANNA N., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
CINDY N., APPELLANT.

Filed June 18, 2013.    No. A-12-994.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed.

Stephanie Flynn, of Stephanie Flynn Law, P.C., L.L.O., for appellant.

Joe Kelly, Lancaster County Attorney, Shellie D. Sabata, and Kelli L. Ceraolo, Senior Certified Law Student, for appellee.

SIEVERS, PIRTLE, and RIEDMANN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Cindy N. appeals from the order terminating her parental rights entered by the separate juvenile court of Lancaster County on September 26, 2012. For the reasons that follow, we affirm.

## BACKGROUND

Cindy was a juvenile ward of the State of Nebraska and placed at the Youth and Rehabilitation Treatment Center in Geneva, Nebraska, when she gave birth to Marieanna N. in 2009. On August 27, 2009, the Lancaster County Attorney's office filed a petition in the separate juvenile court of Lancaster County, alleging Marieanna lacked proper parental care by the faults

- 1 -

or habits of her mother, Cindy. The petition alleged that Cindy was unable to provide Marieanna with a proper and safe residence, protection, and care and that Marieanna was at risk for harm.

On August 27, 2009, the State also filed a motion for temporary ex parte custody, which was granted by the court. On November 24, the State filed an amended petition with the same allegations, but stated that on or about October 3, Cindy had been placed in foster care in Lancaster County. Cindy entered a plea of no contest to the allegations in the amended petition, and her plea was accepted by the court. The order provided that Marieanna should remain in the temporary custody of the Department of Health and Human Services (DHHS), Cindy should complete her high school education, Cindy should have parenting time as arranged by DHHS, and she should maintain a legal means of support and appropriate housing for herself and Marieanna. Cindy and Marieanna were placed in a foster home together on February 10, 2010, and moved to the home where Marieanna is currently placed on September 8.

On November 17, 2011, Cindy turned 19 and moved into her own apartment. At a permanency hearing on January 10, 2012, the plan for Cindy and Marienanna was reunification with a concurrent plan of adoption. The court held a review of disposition hearing on April 5 and received evidence, including the guardian ad litem's report and a caregiver information form. Cindy appeared with counsel and was called as a witness.

The court held another review of disposition hearing on July 19, 2012. Cindy was not present but her counsel was. The court received evidence, including the guardian ad litem's report and a DHHS report. The reports indicate Cindy failed to make progress on the court's orders and was difficult to contact. An exhibit also indicates Cindy's visits were fully supervised due to concerns about "inappropriate people around [Marieanna]," as well as Cindy's general lack of parenting skills. DHHS recommended the permanency objective be changed to adoption with a concurrent plan for guardianship. The court continued the hearing for another month because Cindy was not present, and it determined a permanency planning hearing should take place at that time.

The State filed a supplemental petition and a motion for termination of parental rights on July 26, 2012. At that time, Marieanna had been in foster care her entire life, approximately 3 years.

The hearing on the motion to terminate took place on August 14, 2012. Cindy and her attorney were present, and Cindy entered her voluntary appearance and denied the allegations in the petition.

On September 26, 2012, the court held a formal hearing on the State's motion for termination of Cindy's parental rights. Cindy did not appear but was represented by her attorney, who indicated he was ready to proceed. The record does not contain a reason for Cindy's absence.

David Krogman testified that he monitored visits or performed drop-in visits during weekend and overnight visitation between Cindy and Marieanna. He testified there were numerous issues which continued for most of the visits. These issues included Cindy's refusal to provide the names of individuals who she allowed to be around Marieanna, the presence of alcohol in Cindy's apartment, the difficulty in contacting Cindy to set up monitored visits, and Cindy's argumentative and unresponsive demeanor. Krogman also testified that Cindy did not keep Marieanna on a regular schedule, kept Marieanna up late at night, and snuck out after

Krogman's visits. Krogman also testified Cindy had visitors who entered the apartment late at night without knocking.

A visitation worker testified that she supervised Cindy's most recent visits with Marieanna. She testified that there were several weeks where she was unable to contact Cindy and no visits took place. She also testified Cindy's boyfriend was present for at least one visit, although he was not approved to be present for any visits.

Cindy and Marieanna's foster mother also testified. Marieanna was consistently in the care of the foster mother and father from September 2010 to the date of trial. She testified that Cindy needed frequent prompting to provide care for Marieanna, specifically bringing the child downstairs for meals and using seatbelts.

Cindy's foster mother testified that Cindy lied to her and her husband about going to work. She said Cindy left the home in the morning and returned home late in the evening, but Cindy's employer verified that Cindy had worked for only 2 days. She also said Cindy did not study for, or pass, her driver's license examination and has not pursued her license further. Cindy relies on others for rides.

The foster mother testified that she found lighters in Cindy's room and once found marijuana in Cindy's purse. She also testified that Cindy attended counseling and was diagnosed with bipolar disorder, but Cindy refused to take the medications prescribed to her for such condition. She said Cindy became more rebellious and withdrawn as she got closer to her 19th birthday. She said Cindy had a "[p]reparation for adult living services" worker who helped Cindy with the transition to independent living. Based upon her knowledge and experience, the foster mother said it was her opinion that Cindy was not prepared to parent her child full time.

An officer of the Lincoln Police Department testified that he had contact with Cindy during the pursuit of a man who resisted arrest. The man took refuge in Cindy's apartment, and Cindy's boyfriend blocked the police from entering the apartment, which allowed the man to escape. The man was identified as a member of a street gang. The officer testified that Cindy's boyfriend associates with other known members of the gang and has facial tattoos commonly associated with gang affiliation. The officer said he investigated Cindy's affiliations with the gang. He said she associates with several known gang affiliates, but he was not aware of any tattoos or other markings that tie her to a gang.

Katie Adrian, a child and family services specialist for DHHS, testified she was assigned to this case in April 2012. She testified she had minimal contact with Cindy, though she made several attempts to telephone and text message her. Adrian said Cindy initially had monitored visitation, but she was switched to fully supervised visitation because Cindy was not making herself available to drop-in workers and not letting workers know where she and Marieanna were going to be. Adrian testified that the court ordered Cindy to obtain her diploma through the GED program, but that she failed to do so. Adrian said she told Cindy that Cindy's boyfriend was not approved to attend visitation because he had known gang affiliations.

Adrian stated her opinion that it is in Marieanna's best interests to terminate Cindy's parental rights. She said that Marieanna has been in foster care her entire life and that she is in need of permanency. In addition, she is very attached to her foster parents, who are willing to provide Marieanna with a permanent home.

The court found that Marieanna was a child defined by Neb. Rev. Stat. §§ 43-247(3)(a) (Reissue 2008) and 43-292(2), (6), and (7) (Cum. Supp. 2012) and that it was in her best interests to terminate Cindy's parental rights.

ASSIGNMENTS OF ERROR

Cindy asserts that her court-appointed trial counsel was ineffective and that the court erred in finding DHHS provided reasonable efforts to preserve and reunify the family. Cindy also asserts the court erred in finding that one of the statutory grounds under § 43-292 was established and that it was in the best interests of Marieanna to terminate her parental rights.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independent of the juvenile court's findings. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). However, where evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *Id.*

ANALYSIS

*Ineffective Assistance of Counsel.*

Cindy asserts that her court-appointed counsel provided ineffective assistance because he failed to ensure Cindy was aware of the date of the termination proceedings and because he failed to elicit testimony from witnesses to show she had substantially complied with court orders. She asserts these actions amount to a violation of her due process rights.

We observe that juvenile proceedings are civil rather than criminal in nature and that an individual has no constitutional right to effective assistance of counsel in a civil proceeding. *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003). Therefore, we do not reach the issue of whether trial counsel was effective with regard to how trial counsel questioned witnesses.

We reach Cindy's claim of ineffective assistance of counsel only to determine whether she was afforded due process, as the Nebraska Supreme Court has determined that state intervention to terminate the parent-child relationship must be accomplished by procedures meeting the requisites of the Due Process Clause. *Id.* Procedural due process includes notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker. *Id.* See, also, *In re Interest of Ty M. & Devon M.*, 265 Neb. 150, 655 N.W.2d 672 (2003).

Due process requires a person to be afforded reasonable notice of proceedings. See *In re Interest of Jessica J. & Jennifer C.*, 9 Neb. App. 521, 615 N.W.2d 119 (2000). However, once having appeared, and having the benefit of counsel, that person has some obligation to keep counsel and the court informed of his or her whereabouts. *Id.* We recognize the right of a party to be present when their case is tried; however, this court has held that when a party voluntarily or

negligently fails to appear for scheduled court proceedings after proper notice, such party waives the right to be present at such proceedings. *Id.*

Our review of the record shows Cindy was afforded due process. Cindy did not appear at the formal adjudication trial, but she entered a voluntary appearance on the supplemental petition and her attorney was present for the trial and questioned witnesses. There is nothing in the record that indicates her counsel did not attempt to notify her of the hearing date; rather, there is evidence that she is difficult to contact and that she did not communicate with her attorney regarding her upcoming proceedings. We do not find counsel was ineffective in this regard.

*Statutory Grounds for Termination.*

In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that the termination is in the child's best interests. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012).

The trial court in this case found clear and convincing evidence that three of the statutory grounds listed in § 43-292 were present. First, the court found Cindy had substantially and continuously or repeatedly neglected and refused to give the minor child necessary parental care and protection under § 43-292(2). Second, the court found that under § 43-292(6), reasonable efforts had been made to preserve and reunify the family and that such efforts have failed to correct the conditions leading to the determination. Third, the court found the minor child, Marieanna, had been in an out-of-home placement for 15 or more months of the most recent 22 months under § 43-292(7).

It is clear the child has been in out-of-home placement for at least 15 of the most recent 22 months, satisfying the grounds for termination under § 43-292(7). The record demonstrates that the child was in the temporary legal custody of DHHS from September 2009 through the termination of Cindy's parental rights in September 2012. Marieanna was placed with her current foster parents from September 2010 until that time.

Cindy argues Marieanna was "effectively" in her care during the period when they were placed in the same foster care, but she did not assign as error the court's determination that grounds for termination existed under § 43-292(7). Accordingly, we do not address this issue as error on appeal. See *In re Interest of Diana M. et al.*, 20 Neb. App. 472, 825 N.W.2d 811 (2013) (in order to be considered by appellate court, alleged error must be both specifically assigned and argued in brief of party asserting error).

Cindy also alleges the court erred in finding the statutory grounds were met under § 43-292(2) and (6). However, the State must only prove the existence of one statutory ground, and because Cindy failed to assign § 43-292(7) as error, we affirm the determination of the district court finding the existence of that ground for termination.

*Best Interests of Child.*

Having determined Cindy failed to assign termination under § 43-292(7) as error, the determination of the district court stands, and we next address the best interests of the minor child.

The evidence shows that Cindy failed to make progress on court-ordered objectives. Cindy asserts she participated in a parenting education course, obtained housing, and obtained a

source of employment. However, she has failed to obtain her diploma through the GED program, have regular visitation with Marieanna, obtain her driver's license, or provide a safe and stable home for Marieanna. The evidence shows that Cindy surrounds herself with individuals who have known gang affiliations and allowed persons around Marieanna who were not approved by DHHS. She allowed her apartment to be used by an individual evading arrest, and this is further evidence that the home is not necessarily a stable and secure place for a young child.

After she aged out of foster care, Cindy had infrequent contact with Marieanna and was frequently difficult to contact. As a result, workers were unable to schedule times for Cindy to have visits with Marieanna. Family support workers expressed concerns regarding Cindy's lack of parenting skills. Cindy has been living on her own since November 2011, and to date, she has not provided an environment suitable for unsupervised or monitored visitation. DHHS and the guardian ad litem recommended a change to Marieanna's permanency plan because Cindy lacked maturity and was not stabilizing her situation.

The evidence also shows that DHHS provided services to Cindy, including joint foster care, monthly team meetings, home visits, transportation assistance, parent partner services, parenting education, and medical and childcare assistance. Cindy's caseworkers testified that Cindy participated in visitation when it took place, but otherwise made poor progress toward reunification, and that termination would be in Marieanna's best interests. The evidence shows workers made numerous attempts to schedule visits, but Cindy did not make herself available or tell workers where she could be reached.

The best interests of a child require termination of parental rights where a parent is unable or unwilling to rehabilitate herself within a reasonable period of time. *In re Interest of Emerald C. et al.*, 19 Neb. App. 608, 810 N.W.2d 750 (2012). Marieanna has been in foster care far longer than 15 of the most recent 22 months, and reasonable efforts made by DHHS were unsuccessful in correcting the conditions which led to Marieanna's adjudication. Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *Id*. Upon our de novo review, we find termination of Cindy's parental rights is in Marieanna's best interests.

## CONCLUSION

We find that trial counsel was not ineffective and that his representation did not amount to a violation of Cindy's due process rights. We find that Cindy failed to assign § 43-292(7) as error. We affirm the court's determination that there were statutory grounds for termination and find that termination of Cindy's parental rights is in the best interests of Marieanna.

AFFIRMED.