IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF ANGELEAH M. & AVA M.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF ANGELEAH M. AND AVA M.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,
V.
D'ANGELO E., APPELLANT.

Filed July 15, 2014.    No. A-13-1060.

Appeal from the Separate Juvenile Court of Lancaster County: ROGER J. HEIDEMAN, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Matt Catlett for appellant.

Dan J. Zieg, Deputy Lancaster County Attorney, for appellee.

INBODY, Chief Judge, and IRWIN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

D'Angelo E. appeals from the decision of the separate juvenile court of Lancaster County terminating his parental rights to his daughters, Angeleah M. and Ava M. Upon our de novo review, we find that D'Angelo was provided with the requisite procedural due process in the juvenile court proceedings. We affirm the juvenile court's finding that Angeleah and Ava were children as defined by Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013) because they lacked proper parental care by reason of the fault and habits of D'Angelo. However, we find that the State failed to prove by clear and convincing evidence that termination was in the girls' best interests. We therefore reverse the order of the juvenile court terminating D'Angelo's parental rights and remand the cause for further proceedings.

- 1 -

## II. BACKGROUND

D'Angelo is the biological father of Angeleah, born in 2008, and Ava, born in 2009. Claire M. is the biological mother of Angeleah and Ava. It does not appear from our record that D'Angelo and Claire were ever married. The girls were removed from Claire's custody in February 2011 because on more than one occasion Claire had been under the influence of marijuana while acting as the primary caregiver to the children and because on more than one occasion Claire was cited for shoplifting while the girls were present. The girls were temporarily placed in the custody of the Nebraska Department of Health and Human Services (DHHS). Less than 2 weeks after removal, DHHS placed the children in the home of their maternal grandmother. At the time of the girls' removal from Claire, D'Angelo was incarcerated.

Angeleah and Ava were adjudicated in March 2011 due to the faults or habits of Claire. The girls remained in the custody of DHHS, with placement in the home of their maternal grandmother.

Angeleah and Ava's case came before the juvenile court for numerous review and permanency hearings throughout 2011 and 2012. Claire was provided with numerous services and did make some progress.

D'Angelo was released from prison in the summer of 2012. In August, he contacted the girls' case manager seeking visitation with Angeleah and Ava. The case manager instructed D'Angelo that the first step was to get an attorney and appear in court at the November hearing.

On October 11, 2012, D'Angelo filed a request for court-appointed counsel, which was granted.

At a review hearing held on November 6, 2012 (the proceedings of which do not appear in our record), D'Angelo appeared with counsel. In its order filed on November 6, the juvenile court ordered that Angeleah and Ava should remain in the custody of DHHS, but that they should be placed with Claire. The court also ordered that D'Angelo should have reasonable rights of supervised parenting time, as arranged by DHHS.

D'Angelo had supervised visits with Angeleah and Ava from November 2012 through March 2013. On April 2, D'Angelo was arrested for violating his parole and was incarcerated.

On April 10, 2013, the juvenile court approved a placement change for Angeleah and Ava. The girls were removed from Claire's home and placed into a foster home because Claire had used illegal drugs while providing care for the children.

On May 17, 2013, the State filed a "Second Supplemental Petition and Motion for Termination of Parental Rights of D'Angelo E." Although the caption of the pleading listed both Angeleah and Ava, the allegations therein only related to Ava. The State alleged that Ava was within the meaning of § 43-247(3)(a) by reason of the faults or habits of D'Angelo because (1) he had been aware for approximately 7 months that Ava was his child and that she was placed into foster care after having been removed from her mother's care; (2) he failed to maintain consistent contact with Ava or DHHS, failed to provide for Ava's needs, and/or failed to put himself in a position to assume custody of Ava; and (3) his actions placed Ava at risk of harm. The State also sought to terminate D'Angelo's parental rights to Ava pursuant to Neb. Rev. Stat. § 43-292(1), (2), and (7) (Cum. Supp. 2012). The State alleged that D'Angelo had abandoned Ava for 6 months prior to the filing of the petition; D'Angelo had substantially and continuously

or repeatedly neglected and refused to give Ava, or a sibling, necessary parental care and protection; Ava had been in out-of-home placement for 15 out of the most recent 22 months; and termination was in Ava's best interests.

Although the State sought to terminate Claire's parental rights to Angeleah and Ava in a separate pleading, Claire ultimately relinquished her parental rights to the girls on August 26, 2013. Since Claire is not part of this appeal, she will only be discussed as necessary.

A hearing on the second supplemental petition and motion for termination of D'Angelo's parental rights was held on August 27, 2013. D'Angelo was not present, but was represented by counsel. His counsel asked for a continuance because D'Angelo had been transferred to federal prison and there had not been time to arrange D'Angelo's telephonic appearance. The court overruled the motion to continue, stating, "We can, at least, get started. We can always address [D'Angelo's] due process rights as far as participate [sic]."

The court noted that the caption on the pleading included both Angeleah and Ava, but that the allegations went only to Ava. In response, the State said, "I think there's a question about paternity. That -- That paternity hasn't been established. You know, we did have testing that is done, but I don't believe that we actually have an order or paternity for Angeleah." The State then said, "I only have an order of paternity as it relates to Ava" and "I'm not a hundred percent sure if Angeleah was ever tested. The court stated that "it appears that [D'Angelo] would just be on notice . . . then as to Ava."

The hearing on the second supplemental petition and motion to terminate D'Angelo's parental rights proceeded. The only witness to testify was Melissa Mager. Mager had been a children and family services specialist at DHHS since March 2012, and previously, she worked at KVC from July 2010 to August 2011 and again from October 2011 to February 2012. Mager had been Ava's case manager since October 2011.

Mager testified that shortly after she got the case, she became aware that D'Angelo might be Ava's father. Mager made no efforts at that time to contact D'Angelo because he was in federal incarceration. D'Angelo was released in June or July 2012. Mager testified that D'Angelo contacted her in August and wanted to know how to become a part of the case. Mager said she told him that the girls did not really know him and that the first step was to get an attorney and appear in court. Mager sent him a form to fill out to request an attorney and told him to come to the November 2012 court hearing.

Mager testified that D'Angelo attended the November 6, 2012, hearing, and the court ordered supervised visits. Even though the court had ordered visitation, Mager set up a DNA test for one of the girls and waited until it was done before she set up visitation. Supervised visits started at the end of November and occurred for 2 hours every Sunday. D'Angelo was consistent with his visits, and there were no safety concerns. Visits ended in March 2013 because D'Angelo was arrested on April 2 for violating his parole. In April, Mager did not initially know where D'Angelo was incarcerated. Mager testified that D'Angelo did not contact her after his arrest, nor did he request visits after his arrest. When Mager found out that D'Angelo was in the Diagnostic and Evaluation Center, she did not arrange visitation because "it's not in the children's best interest to have visits in a correctional facility." However, she acknowledged that she had provided visits for other incarcerated parents.

The children were living with Claire the entire time that D'Angelo had visitation. Mager testified that DHHS always works to reunify children with the parent that the children were removed from, which in this case was Claire. Mager testified that D'Angelo was not able to have placement of the children from November 2012 to March 2013, because

[h]e was still on parole from his incarceration and he was living with his aunt and didn't give us the opportunity to do a walk through or -- he wouldn't -- he didn't request placement from the Department. He requested to become a part of their lives. He always told me that he wanted the girls to move back to Claire's house and for her to have custody of the girls and be a family.

Mager only spoke to D'Angelo four or five times after the November 2012 hearing and last spoke to him at the March 2013 review hearing.

Mager testified that Ava should continue to be in an out-of-home placement because D'Angelo has not participated much in her life, Ava barely knows him, he is not in a position to parent her, and Mager did not know when D'Angelo would be released and in a position to parent Ava. Mager testified that it was in Ava's best interests to terminate D'Angelo's parental rights.

Several case plans and court reports from January 2012 through May 2013 were received into evidence. The only substantive information in the reports relevant to D'Angelo was that when he had supervised visits, there were no concerns with the care that D'Angelo provided to the girls and there were no safety concerns. Visitation notes were not offered or received into evidence.

After the State, D'Angelo's counsel, and the guardian ad litem advised the court that they had no more evidence, arguments were made to the court, but those arguments do not appear in our record.

At a hearing on August 29, 2013, wherein D'Angelo was not present but was represented by counsel, the juvenile court, after dealing with some matters related to Claire, stated:

[W]e also continued the matter when we were in court previously on the Second Supplemental Petition, the Motion of Termination of Parental Rights of [D'Angelo]. The Court did indicate that it continued the matter to yesterday. In order for [D'Angelo's counsel] to have an opportunity to speak with his client, given he had become aware of where he was now being housed and if there was anything additional, based on that.

D'Angelo's counsel indicated that he did not do anything additional.

The State then asked the court for permission to withdraw its rest and to "amend the pleadings to conform to the evidence here today." D'Angelo's counsel objected to proceeding on that motion as lacking the appropriate written filing, service, and notice. The objection was overruled. The court allowed the State to withdraw its rest and then asked if the State had another motion. The State said:

Your Honor, I would ask that the motion to terminate the parental rights of [D'Angelo] be amended to include Angeleah M[.] I would have misspoke -- At the beginning of the trial -- When this was filed Angeleah was the only child who had paternity established to [D'Angelo] at that time. I mistakenly confused Ava and Angeleah

on that motion. And later on, in June, Ava was -- did have the paternity established to -- established that [D'Angelo] was the father of her, as well.

. . . .

The testimony was, in both Angeleah and Ava, [D'Angelo] did not object to any of that testimony. I think he's tried it [sic] plus a consent. He had his counsel attend a deposition. He -- He would -- He had -- He had been noticed that the counts related to Angeleah. He has not been prejudiced in any way. The evidence would be the exact same if any motion was filed. With that I would submit it.

Addressing the State, the court said, "You said -- indicated you wished to amend the pleadings to conform to proof. But you indicated it was just the motion to terminate parental rights. Does that also include the Petition, as well?" The State responded, "Yes, Your Honor, it would." D'Angelo's counsel argued that D'Angelo was entitled to notice and an opportunity to be heard and that he had not been notified of any proceeding to terminate his parental rights to Angeleah. In ruling on the State's motion, the court said:

At this time what I'm going to do, is I'm going to allow the State to amend the Petition and the Motion for Termination of Parental Rights. Actually, it's the Second Supplemental Petition and Motion for Termination of Parental Rights as to [D'Angelo]. I am, however, also, going to require that the State then serve [D'Angelo] with a copy of those -- or that pleading and motion for termination of parental rights.

Because, quite frankly, in considering the evidence that was already adduced, the Court [sic] consider the evidence to the extent of the allegations that were - were then pending. I think there's still a kind of due process issue that's raised for [D'Angelo] as it relates to Angeleah, bringing the other child into the Petition and Motion for Termination of Parental Rights. If it ends up being the evidence is the same, we already have the record. But it also then affords him the opportunity if there was additional evidence he wanted to present in relation to Angeleah that that opportunity would be present for him.

. . . .

All right. Not considering it as an amendment to conform to proof, just an amendment. And we'll take up the proof later.

All right. That amendment has been made. We'll get a copy for counsel, then, to have before you leave court today. And then, again, the State will need to have - cause that to be served on [D'Angelo].

At the continued hearing on October 24, 2013, D'Angelo appeared telephonically and was represented by counsel. The State informed the court that D'Angelo had been personally served on October 11 with the "Amended Motion to Terminate his parental rights." The State then proceeded to call Mager as a witness.

On direct examination, Mager testified that there had been no developments in the case since her previous testimony and that she still believed it was in the children's best interests to terminate D'Angelo's parental rights. On cross-examination, Mager testified that when D'Angelo contacted her in the summer of 2012, he said he wanted to be part of the girls' lives and wanted to know about the case progress. Mager told D'Angelo that DHHS was going to try to reunify the girls with Claire. Mager testified that D'Angelo regularly attended supervised

visits starting in November 2012 and that there was no evidence that D'Angelo was inappropriate during the visits or that the girls were negatively affected by the visits.

D'Angelo also testified at the hearing. He testified that he was incarcerated before the children were even removed from Claire and that Claire had brought the children to visit him in prison. D'Angelo said that the entire time he was incarcerated, he called his children at Claire's house or Claire's mother's or sister's house, because he wanted to talk to his children so that they would know his voice. D'Angelo testified that he had known about the case since February 2011 when the girls were removed from Claire. D'Angelo testified that no one from the State had ever contacted him except that he received one letter from DHHS in March or April 2011 informing him that the girls had been removed from Claire and were placed with their maternal grandmother. He said he followed the case while he was in prison and kept in contact with Claire.

When he was released from prison in June 2012, D'Angelo contacted the girls' maternal grandmother to get the case worker's information. He left a message for Mager, but she did not call him back. D'Angelo called Mager again and let her know that he was out of prison and wanted visitation. Mager instructed him to fill out some forms and come to court a few months later. After a court hearing in November 2012, D'Angelo got supervised visits for 2 hours every Sunday.

D'Angelo testified that he missed three visits with his parole officer and is now incarcerated. Regarding the three missed visits, D'Angelo testified that once he had to work, once he had transportation issues, and once he was getting things ready for school. After his arrest on April 2, 2013, D'Angelo was at the Diagnostic and Evaluation Center in Lincoln until the middle of June. While at the Diagnostic and Evaluation Center, DHHS did not contact him about visitation with the girls, even though the center allowed visits. From the middle of June to August 14, D'Angelo was in "Leavenworth, Kansas, CTA, a holding facility." He was then transferred to "Forest City, Arkansas Low," a penitentiary where he remained at the time of the October 24 hearing. D'Angelo testified that he would be released from prison in "97 days," on January 30, 2014, and would be placed on supervised release for 4 years. Upon his release, D'Angelo planned to live with his girlfriend/fiance. D'Angelo testified that he wants to be there for his children and that he is going to be there for them. He testified that "all I want to do is get out and get custody of my kids and be a father and raise them."

The juvenile court filed its order on the amended second supplemental petition and motion for termination of D'Angelo's parental rights on November 1, 2013. The juvenile court found that Angeleah and Ava were children as defined by § 43-247(3)(a) because they lacked proper parental care by reason of the fault and habits of D'Angelo. The juvenile court also terminated D'Angelo's parental rights to Angeleah and Ava pursuant to § 43-292(2) and (7) and found that termination was in the children's best interests. The juvenile court found that the State had not presented sufficient evidence that D'Angelo had abandoned the children and, accordingly, dismissed that count. D'Angelo has timely appealed the juvenile court's order.

### III. ASSIGNMENTS OF ERROR

D'Angelo assigns that the juvenile court (1) deprived him of due process by finding that any allegations in the amended second supplemental petition were true, because no amended

second supplemental petition was actually filed; (2) deprived him of due process by finding that any allegations in the amended motion for termination of parental rights were true, because no amended motion for termination of parental rights was actually filed; and (3) erred in finding that terminating his parental rights to Angeleah and Ava was in their best interests.

## IV. STANDARD OF REVIEW

Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. However, when the evidence is in conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Justine J.*, 286 Neb. 250, 835 N.W.2d 674 (2013).

The determination of whether procedures afforded an individual comport with constitutional requirements for procedural due process presents a question of law. On questions of law, a reviewing court has an obligation to reach its own conclusions independent of those reached by the lower courts. *In re Interest of S.J.*, 283 Neb. 507, 810 N.W.2d 720 (2012).

## V. ANALYSIS

### 1. DUE PROCESS

D'Angelo argues that "a juvenile court deprives a person of due process by assuming jurisdiction over the person's child or by terminating a person's right to the person's child, absent a written and filed request to do so." Brief for appellant at 14.

At the outset, we want to point out that the juvenile court clearly had jurisdiction over this matter. Section 43-247 states in relevant part:

[T]he juvenile court shall have exclusive original jurisdiction as to any juvenile defined in subdivision . . . (3) of this section, and as to the parties and proceedings provided in subdivisions (5), (6), and (7) of this section. . . .

The juvenile court in each county as herein provided shall have jurisdiction of:

. . . .

(3) Any juvenile (a) . . . who lacks proper parental care by reason of the fault or habits of his or her parent . . . or who is in a situation . . . dangerous to life or limb or injurious to the health or morals of such juvenile . . . .

. . . .

(5) The parent, guardian, or custodian of any juvenile described in this section;

(6) The proceedings for termination of parental rights;

(7) Any juvenile who has been voluntarily relinquished, pursuant to section 43-106.01, to the Department of Health and Human Services or any child placement agency licensed by the Department of Health and Human Services.

Angeleah and Ava were adjudicated as children defined by § 43-247(3)(a) in March 2011 due to the faults or habits of Claire. Accordingly, the juvenile court had jurisdiction over the children. The juvenile court also had jurisdiction over D'Angelo, see § 43-247(5), and the termination of parental rights proceeding, see § 43-247(6). Because the juvenile court clearly had the necessary jurisdiction, we next consider D'Angelo's assertion that the State's failure to formally file the

amended second supplemental petition and motion for termination of D'Angelo's parental rights violated D'Angelo's due process rights.

The procedural posture in this case was a little odd. The second supplemental petition and motion for termination of parental rights of D'Angelo, filed on May 17, 2013, listed both Angeleah and Ava in the caption of the pleading, but the allegations therein only related to Ava. At the hearing on August 27, the State acknowledged the discrepancy, stating that paternity had been established only as to Ava. The hearing proceeded regarding whether it was in Ava's best interests to terminate D'Angelo's parental rights--although we note that Mager's testimony often referred to both girls, with no objection made by D'Angelo's counsel. After the State, D'Angelo's counsel, and the guardian ad litem advised the court that they had no more evidence, arguments were made to the court, but those arguments do not appear in our record. There was no specific mention of a continuance at the August 27 hearing, except the court's denial of D'Angelo's motion to continue. However, at a hearing on August 29, the court noted that it had "continued the matter when we were in court previously on the Second Supplemental Petition, the Motion of Termination of Parental Rights of [D'Angelo]." The State sought the court's permission to amend the second supplemental petition and motion to terminate D'Angelo's parental rights to include Angeleah. The State said that it misspoke at the beginning of trial and that paternity had been established for both girls. The court allowed the State to amend the second supplemental petition and motion to terminate D'Angelo's parental rights, but considered it simply as an amendment, not as an amendment to conform to the pleadings. The court also required the State to serve D'Angelo with a copy of the amended pleadings. At a hearing on October 24, the State informed the court that D'Angelo had been personally served with the amended document. Neither D'Angelo nor his counsel contradicted or contested the State's assertion. The hearing proceeded with testimony from Mager and D'Angelo. So while D'Angelo does not claim that he never received the amended document, his argument instead focuses on his assertion that the amended document was never formally filed with the court. In its briefing to this court, the State does not contradict that assertion. Accordingly, we analyze D'Angelo's due process argument based on his assertion that the amended document was not formally filed.

Juvenile proceedings are civil rather than criminal in nature. *In re Interest of Joshua R. et al.*, 265 Neb. 374, 657 N.W.2d 209 (2003). And in civil cases, it is not always necessary to file an amended pleading even if an amendment was made. See, e.g., Neb. Ct. R. Pldg. § 6-1115(b) (when issues not raised by pleadings are tried by express or implied consent of parties, they shall be treated in all respects as if they had been raised in pleadings, and such amendment of pleadings as may be necessary to cause them to conform to evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect result of trial of these issues*). While it is certainly the better practice to file amendments to the pleadings, the failure to file the amendment does not necessarily violate due process. We must look to the facts and procedure in this case to determine whether D'Angelo's due process rights were violated.

The parent-child relationship is afforded due process protection. *In re Interest of L.V.*, 240 Neb. 404, 482 N.W.2d 250 (1992). Consequently, procedural due process is applicable to a proceeding for termination of parental rights. *Id*. Procedural due process requires notice to the person whose right is affected by the proceeding; reasonable opportunity to refute or defend

against the charge or accusation; reasonable opportunity to confront and cross-examine adverse witnesses and present evidence on the charge or accusation; representation by counsel, when such representation is required by the Constitution or statutes; and a hearing before an impartial decisionmaker. *In re Interest of Landon H.*, 287 Neb. 105, 841 N.W.2d 369 (2013).

In the instant case, D'Angelo's counsel (although not D'Angelo himself, either in person or telephonically), was present at the hearing on August 29, 2013, wherein the State sought the court's permission to amend the second supplemental petition and motion for termination of parental rights as to D'Angelo, to include Angeleah. The court allowed the State's amendment, but required the State to serve a copy of the amended pleadings on D'Angelo before the case was allowed to proceed. At the hearing on October 24, D'Angelo (telephonically) and his counsel were present when the State informed the court that D'Angelo had been personally served with the "Amended Motion to Terminate his parental rights" on October 11. Neither D'Angelo nor his counsel contested the State's assertion. Thus, based upon the record before us, we find that D'Angelo was given notice of the proceeding to terminate his parental rights to both Angeleah and Ava and that he was represented by counsel at all relevant proceedings. At the hearing on October 24, D'Angelo was given an opportunity to confront and cross-examine the State's witness, Mager. D'Angelo was also allowed to testify at the hearing and present evidence relevant to the proceeding. And there is no dispute that the juvenile court judge hearing the proceedings was an impartial decisionmaker. Accordingly, D'Angelo was provided with the requisite procedural due process, even if the State failed to formally file the amended pleading.

Having found no merit to this assigned error for the reasons set forth above, we nevertheless want to address that during oral argument of this case, the State indicated that the amendment to the document at issue (pleading filed May 17, 2013) had been performed by interlineation, thereby raising a question as to whether there had been a clerical error made in the record provided to this court since the May 17 document in the transcript contained no such interlineation. When neither party subsequently filed a motion with this court seeking to supplement the record with the interlineated pleading, this court on its own motion requested that the record be corrected with the May 17 interlineated pleading. (We note that the second supplemental petition and motion to terminate D'Angelo's parental rights was amended by interlineation on the May 17 document to include Angeleah. The May 17 document was also separately file stamped on August 29, 2013.) It is unclear why the State, upon receiving D'Angelo's brief assigning as error the failure to file the amended pleading, did not review the transcript and promptly supplement with the correct amended pleading. It is also not clear why the State never discussed the interlineated filed document in its brief. Nor can we discern why D'Angelo raised the "failure to file" argument on appeal when it is evident that an amended document was indeed filed. It is incumbent upon the parties to ensure that a complete and accurate record is presented to this court on appeal, and in particular, if the appellant has failed to supply such a record, the appellee should supplement the record as may be needed and as allowed by court rules. Since the State neither supplemented the record before oral argument, discussed the interlineated document in its brief, nor requested to supplement the record after oral argument, we concluded that this assigned error had to be determined as though the interlineated, filed document did not exist. This resulted in the court's unnecessary use of time on an issue that could have been more immediately disposed of if an accurate, complete record

had been provided to the court and if the interlineated document had been discussed in the briefing. While in this instance, the end result was not affected, that may not always be the case. Attorneys are reminded of the importance of carefully reviewing the record provided to the court and supplementing that record as may be necessary to decide the issues on appeal.

## 2. Termination of D'Angelo's Parental Rights

### (a) Grounds for Termination

In Nebraska statutes, the bases for termination of parental rights are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

In its order terminating D'Angelo's parental rights to Angeleah and Ava, the juvenile court found that D'Angelo substantially and continuously neglected to give the children necessary parental care and protection (§ 43-292(2)) and that the children had been in out-of-home placement for 15 or more months of the most recent 22 months (§ 43-292(7)).

D'Angelo does not contest the juvenile court's finding that grounds for terminating his parental rights exist. And having reviewed the record, we find that grounds did exist. Section 43-292(7) provides for termination of parental rights when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." Angeleah and Ava were removed from parental care in February 2011. Other than being placed with Claire from November 2012 to early April 2013, the children have remained in foster care. At the time of the termination hearing on October 24, 2013, Angeleah and Ava had been in an out-of-home placement for 27 out of the most recent 32 months. Our de novo review of the record clearly and convincingly shows that grounds for termination of D'Angelo's parental rights under § 43-292(7) were proved by sufficient evidence. Once a statutory basis for termination has been proved, the next inquiry is whether termination is in the children's best interests.

### (b) Best Interests

Under § 43-292, once the State shows that statutory grounds for termination of parental rights exist, the State must then show that termination is in the best interests of the child. *In re Interest of Ryder J.*, 283 Neb. 318, 809 N.W.2d 255 (2012). But that is not all. A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.*

The State's case for termination of D'Angelo's parental rights was based on the following facts: that D'Angelo was incarcerated at the time the children were removed from Claire in February 2011; that when he was released in the summer of 2012, he did not ask that the girls be placed with him; and that he had only 4 months of visits before he violated his parole and went back to prison. In its brief on appeal, the State also argues that D'Angelo risks being incarcerated again.

It is true that D'Angelo was incarcerated at the time of the children's removal from Claire. However, he testified that before the children were removed from Claire, Claire brought the children to visit him in prison. D'Angelo also stated that the entire time he was incarcerated, he called his children at Claire's house or Claire's mother's or sister's house, because he wanted

to talk to his children so that they would know his voice. Thus, it appears D'Angelo maintained contact with his children while incarcerated.

When he was released from prison in the summer of 2012, he contacted Mager seeking visitation with his children. Mager did not set up a visitation schedule, and instead, she told D'Angelo to get an attorney and attend the November hearing. At the November hearing, the court awarded D'Angelo visitation. He regularly attended visits, and there were no care or safety concerns. There was no evidence that D'Angelo was inappropriate during the visits or that the girls were negatively affected by the visits. Furthermore, there is no indication that the girls are struggling physically, emotionally, or behaviorally in their foster home due to a lack of permanency.

D'Angelo did not seek placement of the children with him, because the entire time that he had visits the children were living with Claire. D'Angelo wanted the children to live with Claire, and in fact, it was DHHS' goal to reunify the children with Claire. Thus, we can hardly fault D'Angelo for not seeking placement of the children, and it is certainly not a reason to terminate his parental rights.

D'Angelo did violate his parole and was arrested and incarcerated on April 2, 2013. D'Angelo testified regarding the circumstances of his parole violation. He missed three visits with his parole officer--once because he had to work, once because he had transportations issues, and once because he was getting things ready for school. While violation of parole for any reason is serious, this is not a situation where D'Angelo committed a new crime or was indulging in illegal drugs. Furthermore, at the October hearing, he testified that he was scheduled to be released in "97 days," on January 30, 2014. Thus, this is not a situation where D'Angelo would be incarcerated for several more years and leaving his children in limbo. D'Angelo's previous visitations with the children went well, and we see no reason visitation could not resume upon his release. Regarding the State's argument that D'Angelo risks being incarcerated again, that is mere speculation and not a reason to terminate his parental rights at this time. Should D'Angelo be arrested and incarcerated in the future, the State could always file a new motion to terminate D'Angelo's parental rights.

The evidence put forth by the State in this case does not meet the clear and convincing standard necessary to prove that it is in Angeleah's and Ava's best interests to terminate D'Angelo's parental rights, nor did the State prove that D'Angelo is unfit. Accordingly, we find that the juvenile court erred in terminating D'Angelo's parental rights to Angeleah and Ava. We reverse the order of the juvenile court terminating D'Angelo's parental rights to Angeleah and Ava and remand the cause for further proceedings.

We note that D'Angelo does not contest the juvenile court's finding that Angeleah and Ava were children as defined by § 43-247(3)(a) because they lacked proper parental care by reason of the fault and habits of D'Angelo. Thus, we affirm that portion of the juvenile court's order.

## VI. CONCLUSION

For the reasons stated above, we find that D'Angelo was provided with the requisite procedural due process in the juvenile court proceedings. We affirm the juvenile court's finding that Angeleah and Ava were children as defined by § 43-247(3)(a) because they lacked proper

parental care by reason of the fault and habits of D'Angelo. However, we reverse the order of the juvenile court terminating D'Angelo's parental rights to Angeleah and Ava and remand the cause for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.